**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

**LOUISVILLE DIVISION**


**VIBO CORPORATION, INC**

**V.**

**JACK CONWAY, et al.**                    **CIVIL ACTION NO. 08-571-C**


**MEMORANDUM OF ATTORNEY GENERAL OF**
**KENTUCKY IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**


Jack Conway, Attorney General of the Commonwealth of Kentucky – contingently joined by 51 Defendant Attorneys General[1] – submits this memorandum in opposition to the motion of Plaintiff Vibo Corporation, Inc., d/b/a General Tobacco, for preliminary injunctive relief.

**INTRODUCTION**

Plaintiff has failed to satisfy any of the four elements relevant when considering a motion for preliminary injunction. It has absolutely no prospect of success on its claims against Defendant Attorneys General. Its claims of irreparable injury come nowhere near the threshold of "actual and imminent" harm. Granting the injunction would harm not only State finances but also the public health. Finally, enjoining the Defendant Attorneys

---

[1] These Attorneys General have moved to dismiss Plaintiff's Complaint for lack of personal jurisdiction. To the extent that motion should be denied as to one or more of them, those Attorneys General join contingently in Defendant Attorney General of Kentucky's opposition to Plaintiff's motion for preliminary injunctive relief.

General would be contrary to public health interests as well as to the interests of federalism.  Plaintiff's motion for preliminary injunctive relief should be denied.

## STATEMENT OF THE CASE

On November 14, Defendant Attorney General of Kentucky moved to dismiss Plaintiff's Complaint for failure to state a claim (and as to Plaintiff's state law fraudulent inducement claim, lack of subject matter jurisdiction) ("12 (b)(6) Motion"), and submitted a memorandum supporting that motion.   The other Defendant Attorneys General concurrently moved to dismiss Plaintiff's Complaint against them for lack of personal jurisdiction and improper venue.   Those Defendants also joined contingently in the 12(b)(6) Motion, and they are likewise joining contingently in this opposition. Defendant incorporates the Statement of the Case in the memorandum supporting his 12(b)(6) Motion as the Statement of the Case in this opposition together with the amplification below.

A plaintiff seeking injunctive relief bears a heavy burden under ordinary circumstances.  But where, as here, a plaintiff seeks to enjoin State enforcement of lawful statutes, its burden is particularly heavy.  See discussion *infra* at pp. 4-5**.**  Perhaps for this reason Plaintiff's memorandum in support of its preliminary injunction motion contains "facts" purporting to show among other things that Plaintiff had an "understanding" with the Defendant States that so long as Plaintiff executed and performed under the Amended Adherence Agreement (Complaint, Ex. M), the States would take no action to enforce compliance with Plaintiff's admitted non-payments of amounts due under the tobacco

Master Settlement Agreement ("MSA") and the Adherence Agreement. Plaintiff's Memorandum in Support of Motion for Preliminary Injunctive Relief, p.7. Plaintiff goes on to suggest that it was therefore blindsided when 42 Attorneys General notified Plaintiff that, owing to the non-payments, one or more might sue Plaintiff to enforce the MSA and the Adherence Agreement. *Id.* at 8-9.[2]

These alleged "facts" fail to provide relevant and sufficient support for Plaintiff's motion for injunctive relief. Plaintiff does not and cannot claim that Defendant States' alleged "acceptance" of its performance under the Amended Adherence Agreement satisfies any element needed to prevail on its motion for injunctive relief. Nonetheless, Defendant would note that these alleged "facts" conflict with some of the very Exhibits attached to Plaintiff's Complaint and with Plaintiff's own admissions. For example, the Memorandum of Understanding Regarding Effectiveness of Amended Adherence Agreements,[3] Complaint, Ex. L, states clearly that a condition precedent to the Amended Adherence Agreement's becoming effective was the waiver by all Original Participating Manufacturers and by certain Subsequent Participating Manufacturers of any rights they might claim pursuant to the MSA's limited Most-Favored Nations provision and arising out of the Amended Adherence Agreement. Plaintiff concedes that not a single Original or Subsequent Participating Manufacturer tendered the waiver, thus leaving the conditions precedent for triggering the Amended Adherence Agreement unsatisfied.

---

[2]       The notice is Exhibit C to Plaintiff's Complaint. Referring to the notice, Plaintiff asserts that the "Settling States have made this demand notwithstanding the fact that they had previously accepted General Tobacco's performance under the Amended Adherence Agreement." Plaintiff's Memorandum in Support of Motion for Preliminary Injunctive Relief, p. 9.

[3]       The States conditionally executed similar Amended Adherence Agreements with Plaintiff and with another Subsequent Participating Manufacturer, Farmers Tobacco Company of Cynthiana, Inc, that had not made its full payments.   Farmers Tobacco subsequently made up its shortfall, unlike Plaintiff.

Similarly, several but not all States twice agreed to refrain from taking specified actions on account of Plaintiff's defaults in order to give the company time to obtain the waivers. See Complaint, Exs. J, K. However, nowhere in these agreements did the States waive any rights with respect to Plaintiff's payment defaults. Moreover, neither agreement was open-ended and neither precluded sending the 30-day notice on October 27. [4]

In sum, were it needed, Defendant would show that there was never any understanding, representation, or agreement between Plaintiff and the MSA States under which the States "accepted" Plaintiff's performance under the Amended Adherence Agreement as satisfying or remedying Plaintiff's breach of the MSA and Adherence Agreement, or as waiving the States' rights to bring actions for relief from such breaches.

## ARGUMENT

### I.    LEGAL STANDARDS

In determining whether to grant a preliminary injunction, a district court must consider: "(1) the plaintiffs' likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest." *Abney v Amgen, Inc.*, 443 F.3d 540, 546 (6th Cir. 2006), citing *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County,* 274 F.3d 377, 400 (6th Cir. 2001).

---

[4]    While the Amended Adherence Agreement was being negotiated, some (but not all) Defendant States executed a Forbearance Agreement with Plaintiff, Complaint, Ex. J, and then extended that agreement. Complaint, Ex. K. That extension agreement is the only agreement currently in effect, and it *expressly* authorizes the State signatories to sue to recover the Back Payment shortfall.

Although a finding of no likelihood of success "is usually fatal," *id.*, citing *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir.2000), the Sixth Circuit has indicated that a district court "should ordinarily analyze all of the factors." *Id.*, citing *Leary v. Daeschner,* 228 F.3d 729, 739 n.3 (6th Cir. 2000).  This, of course, is not an ordinary case.  Rather, it is one where Plaintiff seeks to enjoin the operation of what the Supreme Court has labeled a "landmark agreement," *Lorillard Tobacco Corp. v. Reilly***,** 533 U.S. 525, 533 (2001) and overturn statutes that the Sixth Circuit has twice upheld in the face of the same alleged constitutional defects on which Plaintiff bases its Complaint. *Trident Int'l Corp. v. Commonwealth of Kentucky,* 467 F.3d 547(6th Cir. 2006); *S&M Brands, Inc. v. Summers,* 228 Fed. Appx. 560 (6th Cir. 2007), aff'g. 393 F.Supp. 2d 604(M.D. Tenn. 2005). As other courts have explained:

> Where (as here) the plaintiff seeks a preliminary injunction of "government action taken in the public interest pursuant to a statutory or regulatory scheme," it must show (at the least) (i) irreparable harm absent the injunction and (ii) a likelihood of success on the merits. . . .   To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer "an injury that is neither remote nor speculative, but actual and imminent," and one that cannot be remedied "if a court waits until the end of trial to resolve the harm."

*Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) ("*Freedom Holdings III*") (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 233-35 (2d Cir.1999)).

## II.    PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS

As noted above, Defendant moved on November 14 to dismiss Plaintiff's Complaint for failure to state a claim and lack of subject matter jurisdiction, while the other Defendant Attorneys General moved to dismiss Plaintiff's Complaint against them for lack of personal jurisdiction and improper venue.  Defendant refers the Court to the

arguments set forth in the memoranda filed in support of those motions as the reasons why Plaintiff has no likelihood of success on the merits and why its motion for preliminary injunction should be denied.

  In particular, in joining the MSA Plaintiff expressly waived any claim of the type its Complaint tries to assert.  Moreover, (1) the acts of a State Attorney General acting in his or her official capacity cannot violate the Sherman Act under the State Action doctrine and (2) Plaintiff cannot meet the exacting legal standards required to preempt state action under  that law. Nor is there any basis upon which Plaintiff could be entitled to relief under the Equal Protection, Due Process, Commerce or Compact Clause of the federal constitution.   As for Plaintiff's federal civil rights damages and state law fraudulent inducement claims, this Court lacks subject matter jurisdiction, the allegations of which are fatally defective in any event.   Moreover, the latter claim's underlying proposition that a company with hundreds of millions of dollars in sales and highly sophisticated lawyers and other representatives could be "induced" to act based on supposed statements of the Settling States is inherently implausible and would – assuming *arguendo* the claim raised any material factual issues – be shown to be patently untrue.

  For all of these reasons, Plaintiff has no prospect of success on its claims against Defendant Attorney General of Kentucky or against the other Defendant Attorneys General who contest personal jurisdiction.   Accordingly, the Court should so hold and declare this holding "fatal" to Plaintiff's motion for preliminary injunctive relief.

## III.   PLAINTIFF HAS FAILED TO SHOW THAT IT WOULD INCUR IRREPARABLE INJURY ABSENT INJUNCTIVE RELIEF

Plaintiff's motion for preliminary injunction seeks to enjoin the State Defendants in two specific ways: prohibiting the States (1) from delisting Plaintiff's cigarette brands from lists of brands approved for sale in the States and (2) from "attempting to take possession of any of [Plaintiff's] escrowed funds . . . . " Motion at 2.  The law in this Circuit is clear:  to "demonstrate irreparable harm," a plaintiff must show that it "will suffer 'actual and imminent' harm rather than harm that is speculative and unsubstantiated." *Abney v Amgen, Inc.*, *supra*, 443 F.3d at 552 citing *Monsanto Co. v Manning*, 841 F.2d 1126 (6th Cir. 1988); *Heideman v South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).  Plaintiff's motion fails this test.

### A. Plaintiff Has Failed to Show any "Actual or Imminent" Harm With Respect to Its Escrowed Funds

Plaintiff's Adherence Agreement obligates it to make quarterly escrow deposits based on its ongoing sales.  The escrow deposits provide some assurance that Plaintiff will fulfill its MSA payment obligation for ongoing sales while continuing to pay down its Back Payment obligation for pre-MSA sales.  Pl Ex. B ¶ 10.  The deposits are to be made to an escrow account and held for the Settling States' benefit.  *Id.*  Simultaneously with executing the Adherence Agreement, Plaintiff signed an escrow agreement covering the aforementioned escrow deposits.

Plaintiff asks the Court to enjoin the States from possessing these deposits. but Plaintiff absolutely fails to show any "actual or imminent" harm. Plaintiff's sole effort to meet this test is the assertion that Plaintiff "believes that one or more of the Defendant

Attorneys General will wrongfully attempt to take possession of [Plaintiff's] escrowed funds . . . ." Denman Decl. ¶ 27.   There is no indication as to what this "belief" is based upon, much less any allegation that any statement was made to Plaintiff by any State representative threatening such an act. . More importantly, however, the "belief" is contradicted by the agreement governing the escrow deposits.  That agreement between Plaintiff and the escrow agent[5] provides that the escrow deposits may be released only when the MSA payment to which the deposits relate comes due and then only upon the escrow agent's receipt of the MSA Independent Auditor's calculation of the amount due. Ex. A, §3(c).  Moreover, the escrow agent is expressly prohibited from "exercising . . . any other claim or right against any of the principal funds escrowed pursuant to this Escrow Agreement . . . ." Id, § 3(e).

In short, the escrow deposits at issue can be released only on or after April 15, 2009, the date on which Plaintiff's next MSA payment is due, and only to satisfy Plaintiff's MSA payment obligation for ongoing sales (i.e., its sales made in calendar 2008, as opposed to its Back Payment obligation for pre-MSA sales) as determined by the MSA's Independent Auditor.  Plaintiff has repeatedly agreed to make full payments on its ongoing sales, and it will suffer no injury and certainly nothing irreparable even when the escrowed funds are released.  But whatever the assumed harm, it is neither "actual" nor "imminent."

---

[5]     Significantly, Plaintiff has not placed this agreement before the Court.  It is attached as Exhibit A to this Memorandum.

**B.  Plaintiff Likewise Has Failed to Show that Delisting of its Brands is Even Threatened, Let Alone "Actual and Imminent," nor that it Would have no Ability to Defend Against Such Future Action.**

The other harm that Plaintiff attempts to demonstrate is that which allegedly would flow from the States' "delisting" its brands.  Thus, Plaintiff contends:  "If the requested preliminary injunctive relief is granted [*sic*] now, the Settling States will likely proceed to delist all of General Tobacco's brands from approved government lists, preventing General Tobacco from making *any* sales for consumers in any of the Settling States." Plaintiff's Memorandum in Support of Motion for Preliminary Injunctive Relief, p. 36.  The sole support for this contention is a sentence in its Executive Vice President and General Counsel's Declaration:

> [Plaintiff] has been notified by 42 of the Settling States that [it] has failed to comply with its obligations under the Original Adherence Agreement and, unless [Plaintiff] fully complies within 30 days, the Defendant Attorneys General will take action to de-list [its] brands.[6]

The "approved government lists" are those authorized under legislation enacted by Kentucky and most other States ("Complementary Legislation", *see, e.g*., KRS § 131-604 *et seq*.).  These statutes generally allow a manufacturer's cigarettes to be sold lawfully in a State only when the manufacturer and its brands are listed on a State Directory of compliant companies and brands.[7]  Plaintiff's cigarette brands are currently listed on all State Directories where Plaintiff's cigarettes are sold.

---

[6]      Denman Decl. ¶ 25.  In a Second Supplemental Declaration (¶ 3), Mr. Denman asserts that injunctive relief is needed to "eliminate the great uncertainty in the marketplace regarding whether General Tobacco's brands will continue to be listed on government approved lists."

[7]      At least one State, Missouri, maintains a Directory but does not list Participating Manufacturers or their brands.  Accordingly Plaintiff faces no risk of being delisted in Missouri, New York, Rhode Island, or several other states which do not have such tobacco directories.

The "notification" referred to by Mr. Denman is the letter sent to Plaintiff on October 27 by the Arkansas Attorney General and joined in by 41 other State Attorneys General.  Complaint, Ex. C.  But nowhere does that letter say or even imply that unless Plaintiff fully complies with its Adherence Agreement obligations within 30 days these Attorneys General "will take action to de-list General Tobacco's brands."   Rather the letter states that the Attorneys General "may bring an action" under MSA § VII after the expiration of 30 days:

> This letter will serve as a 30-Day notice, pursuant to section VII(c) of the MSA, that one or more of the Attorneys General for the foregoing Settling States may bring an action to enforce the provisions of the MSA and the terms of the Adherence Agreement against General Tobacco.

Complaint, Ex. C.

An MSA § VII action is one brought in a State MSA Court to enforce the MSA's terms.  *See* MSA § VII(c) (1).  If the MSA Court finds that the MSA has been violated or breached, it can then issue an order restraining the violation or breach.  Id, § "VII(c)(3). Indeed, § VII actions in State MSA Courts have been the consistent means by which States have enforced the MSA against Participating Manufacturers like Plaintiff for alleged breaches.  Plaintiff would have the right in such action to raise all its defenses to a State's allegations and would not face the prospect of delisting unless and until those defenses had been considered and rejected.  Plaintiff has not cited a single instance where a State delisted the brands of an MSA Participating Manufacturer like Plaintiff based on breach of its contractual payment obligations without there being a court order establishing such breach or authorizing such delisting.

In sum, the record reflects that Plaintiff agreed in the MSA that any Defendant State, upon giving 30 days notice, could bring a State court action against Plaintiff to

enforce the alleged MSA and Adherence Agreement breaches.  Kentucky and 41 other States have issued such a notice.  But no State has advised that it intends to skirt the courts and proceed immediately and without notice to delist Plaintiff's cigarette brands. Plaintiff therefore has shown no real, let alone imminent or actual, threat of injury arising from the alleged delisting by the States of Plaintiff's brands, and the Court should reject Plaintiff's motion for preliminary injunctive relief on this ground as well.

## IV.    GRANTING THE INJUNCTION WOULD INFLICT SUBSTANTIAL HARM ON OTHERS.

Plaintiff's purported showing that its requested injunctive relief would not inflict substantial harm on others is even more perfunctory than its attempt to show that it faces imminent irreparable harm.  Plaintiff focuses on what now seems obvious:  Whatever this Court does, Plaintiff does not intend to honor its payment obligations under the MSA or Adherence Agreement.  If granted injunctive relief, Plaintiff would, however, be able to cease making those payments with the knowledge that no State could seek to delist it regardless of whether it satisfied statutory standards that govern the listing of cigarette manufacturers on State Directories. Such a result would give Plaintiff *carte blanche* to circumvent its agreements with the States.

Plaintiff tries to claim that the Settling States would not be harmed by the requested relief by representing that it would "not object to depositing a sum into the Court's registry to function essentially as a bond." Mem., p. 37. At the same time, however, it proposes that the amount of any such bond be based on its "financial condition" and not on the harm that its products would inflict were an injunction entered or the MSA amounts it would be held obligated to pay once its challenges were rejected.

This proposal violates the explicit purpose of a bond, which is to provide "security in an amount . . . proper to pay the costs and damages sustained" by any wrongfully enjoined States.  Fed. R. Civ. P. 65(c).

A central purpose of the lawsuits that led to the MSA was to ensure that the financial burdens imposed on the States by cigarette smoking be borne by tobacco product manufacturers rather than by the States.  As to that harm, the Centers for Disease Control of the United States Department of Health and Human Services estimated in 2004 – the last year for which data is available – that the smoking related costs incurred for Medicaid payments alone were on average $1.62 per pack or $16.20 per carton.  In 2008, the number is almost certainly higher.  By contrast, Plaintiff's MSA payment for its current sales is a little over $5.00 per carton.  By its motion, Plaintiff seeks to avoid even that low payment obligation.

Nor is the harm to the Settling States' finances the only substantial harm to be considered.  Cigarette smoking causes sickness and death and has been called "perhaps the single most significant threat to public health in the United States." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 161 (2001).  If Plaintiff were in effect relieved of its MSA payment obligation for its ongoing sales as it proposes, the company would be free to return to its pricing practices of its pre-MSA signing days and would once again impose the health care costs attributable to its products on the States without the compensation it agreed to make.  The result General seeks is a free ride at the public's expense.  That result would undermine the express public health purposes of the MSA and related statutes, and would also make a dangerous product more attractive to current and potential smokers, including youth who have not yet been

addicted to those products.  This harm, though difficult to measure, almost certainly outweighs any harm that Plaintiff might suffer, even if it has no choice but to file for bankruptcy.

## V.   GRANTING THE INJUNCTION WOULD NOT SERVE THE PUBLIC INTEREST

As discussed in the previous section, an injunction would prevent the Settling States from enforcing their own statutes.  The States' legislatures enacted their relevant tobacco legislation in the public interest and to protect the public health.  *See e.g.,* KRS §131.606 of the Kentucky Tobacco Master Settlement Agreement Complementary Act ("Complementary Act")(Complementary Act will safeguard the master settlement agreement, the fiscal soundness of the Commonwealth, and the public health). Enjoining their enforcement would be contrary to that interest as well as contrary to the interests of federalism by installing this Court as a super-arbiter of State enforcement and MSA interpretation– notwithstanding that when Plaintiff joined the MSA it expressly agreed that the only courts that would have jurisdiction of such issues would be the MSA State court in Kentucky and in the other Settling States.  *See e.g. Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 501 (1941) (Federal courts "restrain their authority because of scrupulous regard for the rightful independence of the state governments.") (internal quotes omitted).  Indeed a federal court's use of its equitable powers ought to be "in furthering the harmonious relation between state and federal authority."  *Id.*

Plaintiff ignores all of these principles of federalism and other important aspects of the public interest.  Instead, it bases its public interest argument on the proposition that if it is forced to file for bankruptcy, consumers may be deprived of their brand of choice and may be forced to pay more for their cigarettes.  Not only has Plaintiff made no

showing whatever that would support this argument, but that argument is largely beside the point.   Addicted cigarette smokers likely would prefer to buy less expensive cigarettes.  That preference, however, does not make it in the public interest for Plaintiff to supply them under terms that impose massive health care costs on the State, nor does it justify running roughshod over a State's enforcement of its contractual rights and duly enacted laws.   To the contrary, it is plain that as discussed above the public interest is served only if Plaintiff reimburses the States for at least a portion of the costs its cigarettes inflict by making the payments it agreed to make when it joined the MSA, thus internalizing a portion of the harm its products inflict and making them less attractive to those who are not yet addicted.

## VI.   NO INJUNCTION COULD PROPERLY ISSUE WITHOUT A SUBSTANTIAL BOND.

Plaintiff's final contention is that it should not be required to post a bond since the injunction it is seeking, if wrongly entered, "will in no way cause injury to the Defendants such that money damages will provide compensation." Mem., p.38. Of course, to the extent the injunction would inflict harm that could not be compensated for, that would be a reason for its *denial*, not its granting.  In any event, the requested relief clearly would risk inflicting harm on the Settling States by irreparably depriving them of MSA settlement payments to which they are entitled.   At a minimum, therefore, no injunctive relief could properly be granted unless accompanied by a bond sufficient to ensure that at a minimum Plaintiff will be in a position to make the MSA payments on its ongoing cigarette sales.  For its 2008 sales alone, that amount is likely to be on the order of $50 million more than the $36 million Plaintiff has in escrow to cover those sales.  Therefore, any injunction that might issue should be conditioned on the immediate

posting of that amount of bond, and the amount should increase periodically based on future sales that might be made during the existence of any such injunction.

Respectfully submitted,

JACK CONWAY
ATTORNEY GENERAL

  /s/ James M. Herrick _____
**TAD THOMAS**
**JAMES M. HERRICK**
**MICHAEL PLUMLEY**
ASSISTANT ATTORNEYS GENERAL
700 Capitol Avenue, Suite 118
Frankfort, Kentucky  40601
Telephone:  (502) 696-5627
E-mail:  Tad.Thomas@ag.ky.gov
            James.Herrick@ag.ky.gov
            Michael.Plumley@ag.ky.gov
Counsel for Defendant Jack Conway

## <u>CERTIFICATE OF SERVICE AND NOTICE OF ELECTRONIC FILING</u>

I hereby certify that on this 24th day of November, 2008, I electronically filed the foregoing with the Clerk of the Court by using the Court's ECF system, which will send a notice of electronic filing to the following:

Christie A. Moore
cm@gdm.com

Helen A. Thompson
hat@gdm.com

John K. Bush
jkb@gdm.com

Charles S. Cassis
ccassis@fbtlaw.com

Theresa A. Canaday
tcanaday@fbtlaw.com

Brett T. DeLange
brett.delange@ag.idaho.gov

Douglas C. Ballantine
douglas.ballantine@skofirm.com

Travis A. Crump
travis.crump@skofirm.com

Merrill S. Schell
mschell@wyattfirm.com

J. Ronald Denman
jrdenman@generaltobacco.com

James M. Steinwinder
jsteinwinder@ago.state.al.us

Kelly M. Peloquin
kelly.peloquin@azag.gov

Eric B. Estes
Eric.estes@arkansasag.gov

Rupal Shah Palanki
rupal.shahpalanki@po.state.ct.us

Thomas E. Brown
thomase.brown@state.de.us

Marilyn A. Kueper
mkueper@atg.state.il.us

Kristie R. Orme
korme@mcdowellrice.com

Patrick Y. Broxterman
patrick.broxterman@ksag.org

Jennifer A. Willis
jennifer.willis@maine.gov

David S. Lapp
dlapp@oag.state.md.us

Elizabeth J. Koenig
Elizabeth.koenig@state.ma.us

Curtis R. Stokes
curt.stokes@ago.mo.gov

Mark M. McLaverty
mmclaverty@mt.gov

Richard W. Head
richard.head@doj.nh.gov

Lynne R. Fritz
lynne.fritz@nebraska.gov

Carol G. Jacobson
carol.jacobson@dol.lps.state.state.nj.us

David K. Thomson
dthomson@nmag.gov

Christine E. Morrison
christine.morrison@oag.state.ny.us

Dana H. Biberman
dana.biberman@oag.state.ny.us

Joel M. Ressler
jressler@attorneygeneral.gov

Maureen G. Glynn
mglynn@riag.ri.gov

Patricia J. Archer
pat.archer@state.sd.us

John H. Sinclair, Jr.
john.sinclair@ag.tn.gov

Stephen R. Butler
steve.butler@ag.tn.gov

Katherine H. Kinsman
kkinsman@utah.gov

Michelle Hickerson
michelle.hickerson@doj.ca.gov

Patricia H. Wilton
wiltonp@ag.state.la.us

Christy T. Mihaly
cmihaly@atg.state.vt.us

Chris Poag
chris.poag@alaska.gov

Melissa Lou Trippe
mtrippe@ncdoj.gov

Richard L. Harrison
rharris@ncdoj.gov

Susan C. Walker
scwalker@ag.state.oh.us

E. Clyde Kirk
clyde.kirk@oag.ok.gov

Lisa M. Udland
lisa.udland@doj.state.or.us

Victoria T. Oldenburg
voldenburg@ag.nv.gov

Douglas J. Moench
dmoenc@state.wy.us

Kenneth Miller
kmille2@state.wy.us

Robert J. Brookhiser
brookhiserB@howrey.com

Douglas L. Wald
douglas.wald@aporter.com

Eric Shapland
eric.shapland@aporter.com

Michael B. Bernstein
michael.b.bernstein@aporter.com

Stephen R. Patton
spatton@kirland.com

Idit Froim
idit.froim@weil.com

Robert J. Fallis
rustyf@atg.wa.gov

Christopher J. Blythe
blythecj@doj.state.wi.us

and that a true copy of the foregoing was served this same date, via U.S. Mail, postage prepaid, upon the following:

Elizabeth B. McCallum
Howrey, LLP
1299 Pennsylvania Ave., N.W.
Washington , DC 20004

Irving Scher
Lee VanVoorhis
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York , NY 10153
212-310-8000
Fax: 212-310-8007

Hon. Regina Harelson
Office of the Attorney General
323 Center Street, Suite 200
Little Rock, AR   72201

Brian L. Laughlin
Office of the Attorney General
Antitrust, Tobacco, and Consumer
Protection Unit
1525 Sherman Street, 7th Floor
Denver, CO   80203

Lawrence J. Carcare, II
Indiana Attorney General Office
302 West Washington Street
IGC-South 5th Floor
Indianapolis, IN   46204-2770

Attorney General Thurbert E. Baker
State of Georgia
40 Capitol Square, SW
Atlanta, GA   30334-1300

Alex R. Barrett
Deputy Attorney General
Tobacco Enforcement Unit
Dept. of the Attorney General
425 Queen Street
Honolulu, HI   96813

Brian D. Devlin
Office of the Attoney General
State of Michigan
P.O. Box 30212
525 W. Ottawa Street
Lansing, MI   48909-0212

David A. Rienzo
Assistant Attorney General
33 Capitol Street
Concord, NH   03301

Douglas A. Bahr
North Dakota Office of Attorney
General
500 North 9th Street
Bismarck, ND   58501-4509

William E. Thro
Office of the Attorney General
Christopher Newport University
1 University Place
Newport News, VA   23606

John S. Dalporto
West Virginia Office of the Attorney
General
State Capitol Complex
Building 1, Room W-435
Charleston, WV   25305

Attorney General Fepulea'i A. Ripley,
Jr.
Territory of American Samoa
American Samoa Gov't. Exec. Ofc.
Bldg.
Utulei, Territory of American Samoa
Pago, AS   96799

Brian R. Caldwell
Office of the Attorney General
441 4th Street, N.W.
Suite 650-N
Washington, DC   20001

Jonathan B. Williams
Thomas P. Hunter
South Carolina Attorney General Office
P.O. Box 11549
Columbia, SC   29211-1549

Rebekah A. Baker
Assistant Attorney General
Office of the Attorney General
P.O. Box 20207
Nashville, TN   37202

Attorney General Alicia G. Limitiaco
Territory of Guam
Judicial Center Bldg., Ste 2-200E
120 W. O'Brien Dr.
Hagatna, Guam   96910

Office of the Attorney General
Commonwealth of the Northern Mariana
Islands
Administration Building
Saipan, MP   96950

Attorney General Robert J. Sanchez-
Ramos
Commonwealth of Puerto Rico
GPO Box 902192
San Juan, PR   00902-0192

Attorney General Vincent Frazier
Virgin Islands of the United States
Dept. of Justice, G.E.R.S. Complex
488-50C Kronprinsden Gade
St. Thomas, Virgin Islands   00802

Barack S. Echols
Douglas G. Smith
Elli Leibenstein
Kirkland & Ellis LLP
200 E. Randolph Street
Chicago, IL  60601


    __/s/ James M. Herrick_____
    JAMES M. HERRICK
    ASSISTANT ATTORNEY GENERAL