UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| VIBO CORPORATION, INC. d/b/a | ) | |
| GENERAL TOBACCO | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:08-cv-571-C |
| | ) | |
| v. | ) | |
| | ) | |
| JACK CONWAY, in his official capacity | ) | |
| as Attorney General of the Commonwealth of | ) | |
| Kentucky, *et. al.* | ) | |
| | ) | (Electronically Filed) |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT ATTORNEYS GENERAL'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

Respectfully submitted,

John K. Bush
Christie A. Moore
Helen A. Thompson
Brigid O. Gies
GREENEBAUM DOLL & MCDONALD PLLC
3500 National City Tower
101 South Fifth Street
Louisville, KY  40202
(502) 589-4200

COUNSEL FOR PLAINTIFF,
VIBO CORPORATION, INC., d/b/a
GENERAL TOBACCO

**Introduction**

Plaintiff, Vibo Corporation Inc., d/b/a General Tobacco ("General Tobacco"), respectfully replies to the Memorandum of Attorney General of Kentucky in Opposition to Plaintiff's Motion For Preliminary Injunctive Relief ("AGs' PI Opp.").[1]  Defendants oppose the injunction by relying on the same failed arguments as their motions to dismiss, and they ignore the crux of the case:  The grandfathered Subsequent Participating Manufacturers ("SPMs") receive grossly preferential treatment under the Master Settlement Agreement ("MSA") that is both anticompetitive and unconstitutional. The MSA and General Tobacco's Adherence Agreement should be reformed to eliminate these disparities.  Defendant Attorneys General, however, at the behest of Defendant manufacturers, refuse to refrain from de-listing General Tobacco's brands or attempting to take possession of General Tobacco's escrowed funds while this action is pending, thereby necessitating this injunction.

Despite their bold assertions, Defendants have failed to present a compelling argument as to how General Tobacco will not be irreparably harmed if its brands are removed from or not included on governmental approved lists while this litigation is pending.   The simple fact of the matter is that if General Tobacco's brands are not on governmental approved lists, General Tobacco will not be able to sell its products legally and thus would be forced out of business.[2]  Notwithstanding Defendants' gross

---

[1] The AGs' PI Opp. was joined by all other Defendant Attorneys General.  General Tobacco hereby incorporates by reference its Replies to the Defendant SPMs' Memorandum In Opposition To Plaintiff's Motion for Preliminary Injunction ("SPMs' PI Opp.") [DE 240] and the Memorandum of Defendants Philip Morris USA Inc., R.J. Reynolds Tobacco Co., and Lorillard Tobacco Co. In Opposition To Plaintiff's Motion For A Preliminary Injunction ("OPMs' PI Opp.") [DE 254-2].  Plaintiff also responds herein to Defendant manufacturers' arguments regarding preliminary injunction factors addressed herein.

[2] The SPMs claim, without any basis, that General Tobacco will not suffer irreparable injury if its products are de-listed from all governmental approved lists in 46 states because it could still sell in the four non-MSA states (Texas, Florida, Mississippi and Minnesota).  (SPMs' PI Opp. at 34, n. 35).  The SPMs do not

mischaracterizations of General Tobacco's requested relief, it is merely seeking and is

entitled to a preliminary injunction (1) to enjoin Defendant Attorneys General's de-listing

or refusing to list General Tobacco's brands, and (2) to maintain intact the balance

(approximately $36 million) in Plaintiff's escrow account.  As security for such relief,

Plaintiff proposes (1) to make regular weekly deposits into the Court's Registry until the

remaining outstanding balance for its April 15, 2008 MSA payment (approximately $3

million) is satisfied, and (2) to deposit into the Court's Registry amounts that equal MSA

payment obligations as they purportedly come due under the Amended Adherence

Agreement for the remainder of this case. [3]

## **Argument**

## I.   **THE LIMITED RELIEF SOUGHT BY GENERAL TOBACCO IS PERMITTED BY THE MSA**

Lost on the mountain of Defendants' briefs is the limited nature of General

Tobacco's requested relief.  The Defendant manufacturers suggest that General

Tobacco's requested relief requires a global re-writing of the MSA, which they allege is

impermissible under the MSA and well-settled contract law.  (See OPMs PI Opp. at 34-

35; SPMs' PI Opp. at 35).  To the contrary, General Tobacco is merely asking for limited

---

take into account that 91% of all retailers (in all States) refuse to sell non-MSA approved products, so
concentrating in four states when the retailers still refuse to sell the product is not a plausible remedy to
counter the irreparable and immediate injury to General Tobacco if its products are de-listed.  (See
Supplemental Declaration of Krista Holt ("Holt Supp. Decl.") at ¶¶ 15-16, attached as Exhibit A;
Supplemental Declaration of Jeremy Bulow ("Bulow Supp. Decl.") at ¶ 2, pp. 5-6, attached as Exhibit B).
The SPMs also ignore that a substantial decrease in market share (which would be inevitable even if it
could sell cigarettes in four states) is, in and of itself, irreparable harm.  See Grand River Enterprise Six
Nations, Ltd. v. Pryor, 481 F.3d 60, 67 (2d Cir. 2007); see also Freedom Holdings, Inc. v. Spitzer, 408 F.3d
112, 114-15 (2d Cir. 2005).

[3] Contrary to the Defendant manufacturers' assertions, General Tobacco is not seeking to indefinitely
suspend its MSA payments while this litigation is pending, thereby creating some illusionary "competitive
advantage" in favor of General Tobacco.  (See SPMs' PI Opp. at 35-36, 38; OPMs PI Opp. at 37-38).  To
the contrary, General Tobacco has agreed to make its MSA payments into the Court registry.  Accordingly,
General Tobacco is still tasked with its disparate payment obligations throughout this litigation, thereby
negating any alleged "competitive advantage" that could potentially harm the grandfathered SPMs.

relief that is permitted under and contemplated by the MSA.[4]  The Defendant

manufacturers are flatly wrong to assert that the requested preliminary injunction would

"creat[e] a new contract between the parties" as in Diversified Mortgage Investors v. U.S.

Life Title Ins. Co. of N.Y., 544 F.2d 571, 576 (2d 1976), or "impose[] new [contractual]

obligations" as in Blaylock v. Checker Oil Co., 547 F.2d 962, 965 (6th Cir. 1976).

(SPMs' PI Opp. at 35; OPMs' PI Opp. at 34-35).  To the contrary, maintaining General

Tobacco's brands on governmental approved lists would preserve all of the MSA's

provisions, including the grandfathered exemptions, while the claims are adjudicated.

Nor does Plaintiff seek "a unique competitive advantage" (SPMs' PI Opp. at 35; see also

OPMs' PI Opp. at 38); it just wants equal treatment, which apparently the grandfathered

SPMs, enjoying the unique competitive advantage of their grandfathered exemptions and

other MSA benefits, find hard to fathom.  Indeed, none of the primary forms of relief

sought by General Tobacco will serve to terminate the MSA or fundamentally alter it, as

the OPMs and grandfathered SPMs suggest.[5]

---

[4] General Tobacco ultimately seeks the termination of its remaining purported back debt obligation, found in Section II(jj)(2) of the MSA (the "Back Debt Provision").  Importantly, the Back Debt Provision is deemed to be a severable provision.  (See Section XVIII [(o)](1)).  Because the Back Debt Provision is severable, altering or severing this provision from the MSA  cannot constitute an overhaul or rewriting of the MSA.  General Tobacco seeks either the elimination of the grandfathered exemptions, or the granting of such an exemption to all SPMs.  The grandfathered SPM exemption is contained in Section IX(i) of the MSA (the "Grandfathered SPM Exemption Provision").  While this provision is non-severable, the MSA also contemplates the renegotiation of such provisions when a court materially modifies, renders unenforceable, or finds to be unlawful any of the Nonseverable Provisions.  (See Section XVIII [(o)](2)). In light of these provisions, Defendants' argument that the relief sought would require an overhaul or rewriting of the MSA is akin to Chicken Little's claim that the sky is falling and should be disregarded as nothing more than a fear tactic.

[5] The Defendant manufacturers further rely on two inapposite cases, Perez v. Aetna Life Ins. Co., 150 F.3d 550 (6th Cir. 1998) and Circuit City Stores, Inc. v. Mantor, 335 F.3d 1101 (9th Cir. 2003) that do not support its position.  For example, Perez  is cited for the simple proposition that "courts are not permitted to rewrite contracts."  Perez 150 F.3d at 557.  Perez, however, involved contract interpretation and whether the court should rewrite an unambiguous contract.  Id.  General Tobacco is not asking the Court to rewrite the MSA because it is ambiguous or subject to an interpretation dispute, nor is it asking the Court to perform an overall rewriting of the MSA.  Circuit City is likewise inapposite as it stands for the proposition that a court cannot sever a provision in a contract unless the provision is "collateral to the purpose of the contract." 335 F.3d at 1109.  Importantly, this narrow and limited legal proposition only applies to a California civil

II.     **GENERAL TOBACCO'S IRREPARABLE AND IMMEDIATE HARM FAR OUTWEIGHS ANY CONCEIVABLE HARM TO OTHERS**

As stated above, all Plaintiff seeks is to preserve the status quo.  Where, as here, the requested relief is so limited, the proposed arrangement to secure the relief so reasonable, and Plaintiff's irreparable and immediate harm so great, courts have not hesitated to grant an injunction.  See In re DeLorean Motor Co., 755 F.2d 1223, 1229-1230 (6th Cir. 1985); Packard Instrument Co. v. ANS, Inc., 416 F.2d 943, 944 (2d Cir. 1969).  Indeed, in these circumstances, the Court may maintain the status quo without delving as deeply into Plaintiff's claims. See Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982) (if other factors warrant it, a court may grant a preliminary injunction even when the plaintiff fails to show a strong or substantial likelihood of success on the merits of his claim). [6]   General Tobacco need only demonstrate likelihood, not certainty, of success on the merits.  Id.; see also Univ. of Tex. v. Camenish, 451 U.S. 390, 395 (1981) (a party is not required to prove his case in full at a preliminary injunction hearing).

General Tobacco welcomes Defendant Attorneys General's straightforward acknowledgment that "the escrow deposits at issue can be released only on or after April 15, 2009."  (AGs' PI Opp. at 8).  Far less clear, however, is Defendant Attorneys General's assertion that "no State has advised that it intends to skirt the courts and

---

statute involving the severability of an unconscionable contractual provision.  Moreover, Circuit City involved an arbitration agreement that did not contain a section defining which of its provisions were severable, as the MSA does.  Both Perez and Circuit City can and should be disregarded by the Court.

[6] While it is unnecessary to determine whether plaintiff has demonstrated a strong likelihood of success on the merits when the other factors warrant an injunction, General Tobacco has satisfied this element and has shown  that it will likely succeed on its claims that the MSA unlawfully imposes more severe payment obligations and other restrictions on General Tobacco than those imposed on certain other tobacco manufacturers.  A full discussion of this element is set forth in General Tobacco's Replies to SPMs' PI Opp. and OPMs' PI Opp., and expressly incorporated herein.

proceed immediately and without notice to de-list Plaintiff's cigarette brands." (Id. at

11).  As the Court is aware, Defendant Attorneys General promised they would refrain

from seeking to de-list General Tobacco's brands for, at most, only thirty days after the

hearing on the motions to dismiss.  Unless Defendant Attorneys General are willing to

extend their commitment, General Tobacco still needs a preliminary injunction.

     Defendants' argument that Plaintiff may litigate its claims as "defenses" in

enforcement actions brought in at least 42 courts around the country (see AGs' PI Opp. at

10; SPMs' PI Opp. at 33) offers no valid reason to deny the injunction.[7]  If brought in

state courts, these cases would not allow General Tobacco to make federal antitrust

claims, for which federal courts have exclusive jurisdiction, see 15 U.S.C. § 15(a); Vendo

Co. v. Lektro Vend Corp., 433 U.S. 623, 664-65 (1977) (Blackmun, J., concurring).

Furthermore, the 42-plus cases would create unjustified costs and burdens, as well as risk

conflicting rulings to govern the parties' conduct, particularly given that there are no

means to transfer and consolidate state court actions pending in separate jurisdictions.

See generally 28 U.S.C. § 1407 (transfer and consolidation available only for federal

multidistrict litigation, not state cases in multiple jurisdictions).  Where, as here, the

Court has personal jurisdiction over all Defendants, all parties deserve consolidated

treatment.  Indeed, Defendant Attorneys Generals themselves recognized the utility of

---

[7] Contrary to the assertions of the SPMs and OPMs, this case is far different from Travis v. Pennyrile Rural
Elec. Coop., 399 F.2d 726, 729 (6th Cir. 1968), which was a suit to enjoin a property condemnation
threatened by a single government entity in a single jurisdiction. (See SPMs' PI Opp. at 34; OPMs' PI Opp.
at 33).  Moreover, unlike the plaintiff in Travis (whose property would not decrease in value while waiting
for the government's condemnation action), General Tobacco faces immediate and irreparable devastating
loss from further delay.  In the short time period since 42 Defendant Attorneys General sent their 30-day
notice letter on October 27, 2008 ("October 27th Letter"), General Tobacco's sales have almost completely
evaporated, forcing the lay-off of 31 employees already, because of marketplace uncertainty regarding
whether Plaintiff's brands will remain on governmental approved lists. (See Second Supplemental
Declaration of J. Ronald Denman ("Denman Supp. Decl.") [DE 155] ¶¶ 4-6).  This fact is likely not lost on
the OPMs and grandfathered SPMs.

consolidation when 42 of them combined together to send the October 27th Letter. (See Complaint ("Com.") [DE 1] and Amended Complaint ("Am. Com.") [234], Ex. C).

Defendant Attorneys General have no basis to assert that an injunction "would give Plaintiff carte blanche to circumvent its agreements with the States." (AGs' PI Opp. at 11). General Tobacco seeks nothing of the sort – merely to operate on terms similar to the Amended Adherence Agreement under which Plaintiff operated for over one year with Defendant Attorneys General's blessing. During that period General Tobacco made MSA payments totaling approximately $78,250,000.00. (See Am. Com. at ¶ 6; Declaration of J. Ronald Denman ("Denman Decl.") [DE 2-4 ] at ¶ 9). That number hardly suggests that General Tobacco "seeks a free ride at the public's expense" (AGs' PI Opp. at 12) or that Plaintiff seeks to "justify running roughshod" over the State's interests (id. at 14). As its proposed security for the relief shows, General Tobacco does not seek a pricing advantage or to avoid any legitimate MSA payment; it simply requests a way, with this Court's oversight of its payments, to stay in business while this case remains pending.

"It is well-established that a movant's loss of current or future market share may constitute irreparable harm." Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 67 (2d Cir. 2007); see also Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114-15 (2d Cir. 2005). As of the end of the first quarter in 2008, General Tobacco's market share had shrunk substantially since joining the MSA, with its overall sales down 40%. (See Holt Supp. Decl. at ¶ 5 ). Since the October 27th Letter, General Tobacco's sales have dropped to next to nothing (See Denman Supp. Decl. at ¶¶ 4-6); obviously, if this development is not reversed, Plaintiff will soon have essentially zero market share –

6

classic circumstances for a finding of irreparable harm.  See Novartis Consumers Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 596 (3d Cir. 2002) ("In a competitive industry where consumers are brand-loyal, … [the] loss of market share is a potential harm which cannot be redressed by a legal or an equitable remedy following a trial."  (internal quotation marks and citation omitted)).

As set forth more fully in General Tobacco's Replies to the SPMs' PI Opp. and the OPMs' PI Opp., Defendant manufacturers' arguments against the injunction are also baseless.  For example, contrary to what the grandfathered SPMs assert, General Tobacco's media statements do nothing to lessen the imminent and irreparable nature of harm from the de-listing of its brands.  (See SPMs' PI Opp. at 33).[8]  Nor is the injury something General Tobacco "brought on itself and which it has always had the power to avoid if it wanted to do so."  (SPMs' PI Opp. at 36; see also OPMs' PI Opp. at 2, 35).[9]  It is not General Tobacco's inability to properly price its product, but rather the unreasonable discriminatory terms imposed on General Tobacco that has caused the injury.

---

[8] The grandfathered SPMs rely on Odetics v. Storage Tech. Corp., 14 F. Supp. 2d 785, 797 (E.D. Va. 1998) for the premise that statements to the media may diminish a plaintiff's alleged harm.  (See SPMs' PI Opp. at 33).  In a press release, the defendant in Odetics admitted that it had developed new technology that did not infringe on the patent that was the subject of the patent infringement action, thereby admitting it had remedied any harm it may suffer if an injunction was granted.  Id.  General Tobacco's statements to the media are mere marketing efforts to mitigate the damage caused by the Settling States' issuance of the October 27th Letter and the Defendant manufacturers' use of that letter to suggest to General Tobacco's customers that Plaintiff's brands will be de-listed.  To insinuate that General Tobacco cannot present the most positive angle of its precarious position in an attempt to retain what is left of its quickly declining client base, without diminishing its alleged harm, is illogical, especially given that its statements to the media made no admission of lack of harm if an injunction is not granted.

[9] (See Holt Supp. Decl. at ¶¶ 5-9).  See also General Tobacco's Reply to OPMs' PI Opp.  The OPMs also suggest that because General Tobacco joined the MSA it cannot allege harm that it "inflicted upon itself." (See OPMs' PI Opp. at 35).  The OPMs fail to take into account, however, that General Tobacco was fraudulently induced to join the MSA and was denied access to critical information necessary to fairly negotiate its terms.  (See Am. Com. ¶¶ 164-166).

Finally, it is outrageous for the grandfathered SPMs to argue that they "face substantial harm, and substantial unfairness" unless General Tobacco's brands are de-listed. The grandfathered SPMs enjoy exemptions that collectively total almost 4% of the market – some $2,200,000,000 in exempt sales from the inception of the MSA through last year, and approximately $305,000,000 in exempt sales during last year alone. (See Amended Declaration of Krista Holt ("Holt Am. Decl.") [226-2] at ¶¶ 22, 37). The grandfathered SPMs have paid the Settling States zero for these sales, despite that their collective exempt market shares constitute more than three times the market share of General Tobacco's sales, on which Plaintiff has paid the Settling States approximately $78,250,000 for last year's sales and approximately $470,000,000 (plus more than $36,000,000 in escrow) for all sales as a company. See Holt Am. Decl. at ¶ 30; see also Denman Decl. at ¶¶ 9, 11, 14). It is absurd for the grandfathered SPMs to claim that any reduction in General Tobacco's MSA payment, when the grandfathered SPMs are not required to pay anything for sales astronomically greater than General Tobacco's, would give Plaintiff "a substantial and unfair advantage." (SPMs' PI Opp. at 39). Likewise absurd is the grandfathered SPMs' assertion that the injunction would allow General Tobacco to "artificially lower [its] prices." (Id.). All the injunction will do is allow General Tobacco to remain in business selling with regulatory costs that still exceed such costs that the grandfathered SPMs pay.

## III.   THE REQUESTED INJUNCTION IS IN THE PUBLIC INTEREST

Nothing could be further from the truth than the suggestion that General Tobacco seeks a result that "would undermine the express public health purposes of the MSA and related statutes." (AGs' PI Opp. at 12; see also SPMs' PI Opp. at 38). In fact, Plaintiff

seeks an ultimate remedy in this case that would make application of the MSA far more consistent with improving public health.[10]

Nor is there any merit to Defendant Attorneys General's objection to "this Court as a super-arbiter of State enforcement and MSA interpretation." (See AGs' PI Opp. at 13). As General Tobacco has explained, in numerous ways the MSA expressly contemplates federal court oversight of the MSA and actions of the parties thereunder. (See Plaintiff's Opposition To Defendants' Motions To Dismiss Pursuant To Federal Rules Of Civil Procedure 12(B)(1) And 12(B)(6) [DE 239] at 34). Moreover, federal courts clearly have the power to enjoin state agency enforcement actions that violate federal statutory and constitutional law. See Kentucky Res. Council, Inc. v. U.S.E.P.A., 304 F. Supp. 2d 920, 928-929 (W.D. Ky. 2004); Albarado v. Kentucky Racing Comm'n, 496 F. Supp. 2d 795, 799-803 (W.D. Ky. 2004); Louisville & N.R. Co. v. Bosworth, 209 F. 380 (E.D. Ky. 1913).

Defendant Attorneys General belittle the value of consumers having product choice. (See AGs' PI Opp. at 13-14). Promotion of consumer choice, however, is a well-recognized aspect of the public interest that may be considered when granting a preliminary injunction. See Beverage Mgmt. Inc. v. Coca-Cola Bottling Corp., 653

---

[10] The Defendant manufacturers argue that the public will suffer if General Tobacco's MSA payments are "relieved" while this litigation is pending. (SPMs' PI Opp. at 38; OPMs' PI Opp. at 38). To the contrary, however, General Tobacco has not asked to be "relieved" of its payment and has, in fact, agreed to continue to make its MSA payments into the Court registry while this litigation is pending. See infra n. 3. Second, it is rather ironic that the SPMs argue that the public is harmed by any decrease in MSA payments due to the States' loss of valuable revenue to "offset the health-related costs of smoking," considering the grandfathered SPMs sell billions of cigarettes a year pursuant to their "exemptions" of which the States receive no money for public health costs. (Id.). Even the OPMs recognize that one of the primary goals of the MSA is to ensure that the "States are reimbursed for health care costs on all cigarette sales. (OPMs' PI Opp. at 37). Admittedly the grandfathered exemptions are not in furtherance of the MSA's goals. Therefore, a win for General Tobacco would enable Defendant Attorneys General to eliminate the grandfathered market shares that permanently "reward" the grandfathered SPMs with payment exemptions for brands and market shares they built in the period of the industry's allegedly wrongful conduct through

F.Supp. 1144, 1158 (S.D.Ohio 1986) (court declined to grant injunction, in part, because it would not promote consumer choice); <u>Blue Cross of Wash. & Ala. v. Kitsap Physicians Serv.</u>, 1981 WL 2198 at *5 (W.D.Wash. 1981) (One of the primary objectives of both state and federal antitrust policy is to insure that the freedom of choice of consumers of goods and services is not restricted by conduct that is anticompetitive); <u>MxEnergy, Inc. v. Rochester Gas & Elec. Corp.</u>, 2006 WL 625845 at * 3-4 (W.D.N.Y. 2006) (promoting product choice for consumers was one factor court weighed in granting preliminary injunction).  Defendant Attorneys General do not cite <u>any</u> authority to support their position that consumer choice should have any diminished importance in the context of tobacco products than for any other product.  In fact, the tobacco industry has been closely monitored by the Federal Trade Commission and the Department of Justice in order to ensure promotion of competition for the benefit of the consumers:

> Antitrust has policed no industry more heavily than tobacco. . . . public enforcers have repeatedly brought criminal and civil actions seeking both structural and deterrence remedies to maintain competition.  In parallel, hundreds of private antitrust suits have been filed against tobacco defendants.  The effect of these suits has been to maintain a modestly competitive market structure, despite the market share concentration of the cigarette and smokeless tobacco oligopolies.

<u>See</u> Daniel A. Crane, Harmful Output In The Antitrust Domain: Lessons From The Tobacco Industry, 39 Ga. L. Rev. 321, 327 (2005).   To say that consumers' choice is not important merely because this case involves cigarettes is wholly unjustified and outright false.

---

1998.  (<u>See</u> Holt Am. Decl. at ¶¶ 19-23; Declaration of Jeremy I. Bulow ("Bulow Decl.") [DE 15-2] at ¶16).

IV.   **THE COURT SHOULD REQUIRE REASONABLE SECURITY FOR THE INJUNCTION BASED ON GENERAL TOBACCO'S FINANCIAL CONDITION**

As stated above, General Tobacco is willing to deposit into the Court's registry all amounts as they would purportedly come due under the Amended Adherence Agreement as security for the preliminary injunction.[11]   (See Introduction, supra; see also Prel. Inj. Memo. at 38).  Rule 65 of the Federal Rules of Civil Procedure contains the bonding requirements for preliminary injunctions, and provides that a court may issue a preliminary injunction only "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained . . . ."  Fed. R. Civ. P. 65.  Given that General Tobacco is willing to deposit into the Court's registry all amounts that would purportedly come due under the Amended Adherence Agreement, thereby preserving the funds necessary to compensate Defendant Attorneys General for any damages sustained if it were determined they had been wrongfully enjoined, additional security is not necessary.

Consistent with Rule 65, courts recognize that the rule in the Sixth Circuit has long been that the district court possesses discretion over whether to require the posting of security.  USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94, 100 (6th Cir. 1982) (amount of security given by applicant for an injunction is matter of discretion for trial court, which may require no security at all); Molton Co. v. Eagle-Picher Indus., Inc., 55 F.3d 1171, 1176 (6th Cir. 1995) (same).  In making this determination, a court may consider, among other things, the financial condition of the plaintiff.  See Cole v.

---

[11] Despite General Tobacco's clear request for relief and its agreement to continue making MSA payments into the Court registry while this litigation is pending, the SPMs still claim that "the proposed preliminary relief would relieve General [Tobacco] of all current payment obligations." (SPMs' PI Opp. at 36, n.37). This is not only unsupported by the record, but blatantly contradicts the record.

Arvinmeritor, Inc., 516 F. Supp. 2d 850, 880 (E.D. Mich. 2005) (after considering factors such as the financial condition of plaintiffs and the public interest, the court issued a preliminary injunction without requiring posting of any bond); Warner v. Ryobi Motor Prod. Corp., 818 F.Supp 907, 909 (D. S.C. 1992) ($250 bond where a great number of plaintiffs had limited assets); Golden v. Kelsey-Hayes Co., 845 F. Supp. 410, 416-417 (E.D. Mich. 1994) (requiring $100,000 bond after considering plaintiffs' financial conditions despite defendants alleging over $1 million in potential damage caused by granting of injunction).  Accordingly, this Court should consider General Tobacco's financial condition in holding that additional security is not warranted in this case.

If General Tobacco were ordered to post unreasonable security, it would be unable to secure the injunction, thus allowing Defendant Attorneys General to de-list Plaintiff's brands. Bankruptcy would then likely be the only option for General Tobacco. Such a result undermines the principle of accessibility to the courts for judicial review of alleged wrongdoings.  See Jeffreys v. My Friend's Place, Inc., 719 F. Supp. 639, 649 (M.D. Tenn. 1989) (in granting injunctive relief without requiring a bond, the court recognized that waiving security or requiring mere nominal security is particularly appropriate where requiring security would effectively deny access to the judicial system).  Because General Tobacco has already agreed to pay the remaining outstanding balance for its April 15, 2008 MSA payment (approximately $3 million) into the Court's registry on a weekly basis, as well as additional amounts that equal purported MSA payment obligations as they become purportedly due under the Amended Adherence Agreement for the remainder of this case, and because its precarious financial condition

does not allow for additional security, this Court has discretion not to require additional security and fully comply with the confines of Federal Rule of Civil Procedure 65(c).

## <u>Conclusion</u>

For the foregoing reasons and for those set forth in General Tobacco's Opening Memorandum and Replies to the OPMs' and grandfathered SPMs' Responses in Opposition to Plaintiff's Motion for Preliminary Injunction, incorporated herein by reference, General Tobacco respectfully requests that the Court grant General Tobacco's Motion for a Preliminary Injunction.

Respectfully submitted,

/s/ John K. Bush
John K. Bush
Christie A. Moore
Helen A. Thompson
Brigid O. Gies
GREENEBAUM DOLL & McDONALD PLLC
3500 National City Tower
Louisville, KY 40202
(502) 589-4200

COUNSEL FOR PLAINTIFF,
VIBO CORPORATION, INC.
D/B/A GENERAL TOBACCO

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2008, I served the foregoing on all counsel of record identified below in the manner specified, via transmission of Notice of Electronic Filing generated by CM/ECF to the following:

**ALABAMA**
James M. Steinwinder
Assistant Attorney General
Office of Attorney General
500 Dexter Avenue
Montgomery, AL 36130
334.353.9131
jsteinwinder@ago.state.al.us

**ALASKA**
Chris Poag
Assistant Attorney General
P.O. Box 110300
Juneau, AK 99801
907.465.4132
Chris.poag@alaska.gov

**ARIZONA**
Kelly M. Peloquin
Ann Uglietta
Assistant Attorney General
Arizona Attorney General's Office
1275 W. Washington Street
Phoenix, AZ 85007-2926
317.232.6239
Kelly.peloquin@azag.gov
Ann.uglietta@azag.gov

**ARKANSAS**
Eric B. Estates
Regina Harelson
Assistant Attorney General
323 Center Street, Ste 200
Little rock, AR 72201
501.682.8090
Eric.estes@arkansasag.gov

**CALIFORNIA**
Michelle Hickerson
Deputy Attorney General
Public Rights Division
110 W. A Street, Ste 1100
San Diego, CA 92101
Michelle.hickerson@doj.ca.gov

**COLORADO**
Brian L. Laughlin
Assistant Attorney General
Tobacco Settlement Enforcement
Colorado Department of Law
1525 Sherman Street – Seventh Floor
Denver, CO 80203
303.866.3994
303.866.4916 (fax)
Brian.laughlin@state.co.us

**CONNECTICUT**
Rupal Shah Palanki
Asst. Attorney General
Office of the Attorney General
55 Elm Street, P O Box 0120
Hartford, CT 6141-0120
860.808.5270
860.808.5385 (fax)

**DELAWARE**
Thomas Brown
Deputy Attorney General
Delaware Deputy of Justice
820 North French Sate 6th Floor
Wilmington, DE 19801
302.577.8400
thomase.brown@state.de.us

Rupal.shahpalanki@po.state.ct.us


**DISTRICT OF COLUMBIA**
Brian R. Caldwell
Asst. Attorney General
Office of the Attorney General
  For the District of Columbia
4441 Fourth Street, NW Ste 650 N
Washington, TC  20001
202.727.6211
Brian.caldwell@dc.gov


**HAWAII**


**ILLINOIS**
Marylyn A. Keuper
Chief, Tobacco Enforcement Bureau
Office of the Attorney
500 S. 2nd Street
Springfield, IL 62706
217.785.8541
217.524.4701 (fax)
mkueper@atg.state.il.us

**IOWA**
Kristie Remster Orme
McDowell, Rice, Smith & Buchanan, PC
605 W. 47th Street, Ste 350
Kansas City, MO 64112-1905
korme@mcdowellrice.com


**GEORGIA**
Sidney R. Barrett, Jr.
Senior Asst. Attorney General
Robin G. Cohen
Asst. Attorney General
Office of the Attorney General
40 Capital Square, SW
Atlanta, GA 30334
404.656.3202
404.656.4190
sbarrett@law.ga.gov
rcohen@law.ga.gov


**IDAHO**
Brett t. DeLange
Deputy Attorney General
State of Idaho
Consumer Protection Division
954 W. Jefferson, 2nd Floor
Boise, ID 83702
P.O. Box 83720
Boise, ID 83720-0010
208.334.2424
Brett.delange@ag.idaho.gov


**INDIANA**
Lawrence J. Carcare II
Deputy Attorney General
Tobacco Enforcement
IGC-South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204
Lawrence.carcare@atg.in.gov


**KANSAS**
Patrick Broxterman, Director
Tobacco Enforcement Unit
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
785.368.8452
Patrick.broxterman@ksag.org

15

**KENTUCKY**
Hon. Michael Plumley
James M. Herrick
Hon. Tad Thomas
Office of the Attorney General
Office of Civil & Environmental Law
The Capital Building
700 Capital Avenue, Ste 118
Frankfort, KY 40601
Phone:  502.696.5627
Email:   michael.plumley@ag.ky.gov
          james.herrick@ag.ky.gov
          tad.thomas@ag.ky.gov


Gary D. Wilson
4636 30th Street
Washington, DC 20008-2127
202.362.7417
202.362.7417 (fax)
gary.d.wilson@verizon.net


**MAINE**
Jennifer A. Willis
Asst. Attorney General
Consumer Protection Division
Burton M. Cross Office Bldg.
111 Sewall Street
Augusta, ME 04333
jennifer.willis@maine.gov


**MASSACHUSETTS**
Elizabeth J. Koenig
Asst. Attorney General
Consumer Protection Division
Public Protection Bureau
One Ashburton Place
Boston, MA 02108
617.727.2200


**MISSOURI**
Curtis R. Stokes
Asst. Attorney General
P.o. Box 899
Jefferson City, MO 65102

**LOUISIANA**
Patricia H. Wilton
Asst. Attorney General
Sanettria Pleasant (phone contact person)
Asst. Attorney General
Tobacco Settlement Enforcement Unit
Louisiana Dept. of Justice
1885 N. Third Street, 4th Floor
P.O. Box 94005
Baton Rouge, LA 70804-9005
225.326.6300
225.326.6423 (Sanettria direct)
225.326.6495 (fax)
wiltonp@ag.state.law.us
pleasants@ag.state.la.us


**MARYLAND**
David Lapp, Chief Counsel
Tobacco Enforcement Unit
Office of the Attorney General of
Maryland
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
410.576.7056
dlapp@aog.md.us


**MICHIGAN**
Brian D. Devlin
Administrative Law Section
P.O. Box 30212
Lansing, MI 48909
517.373.1123
devlinb@michigan.gov


**MONTANA**
Mark McLaverty
Montana Dept. of Justice
215 North Sanders
P.O. Box 201401

16

573.751.1143
Curt.stokes@ago.mo.gov

Helena, MT 201401
406.444.9514
mmclaverty@mt.gov

**NEBRASKA**
Lynne R. Fritz
Asst. Attorney General
Nebraska Attorney General's Office
2115 State Capitol
PO Box 98920
Lincoln, NE 68509-8920
Lynne.fritz@nebraska.gov

**NEVADA**
Victoria Thimmesch Oldenburg
Senior Deputy Attorney General
5420 Kietzke Lane, Ste 202
Reno, NV 89511
775.688.1818
voldenburg@ag.nv.gov

**NEW HAMPSHIRE**
David A. Rienzo
Asst. Attorney General
Richard W. Head
Asst. Attorney General
33 Capitol Street
Concord, NH 03301
603.271.1249
david.rienzo@doj.nh.gov
richard.head@doj.nh.gov

**NEW JERSEY**
Carol B. Jacobson
Sr. Deputy Attorney General
124 Halsey Street
PO Box 25029
Newark, NJ 07101
973.648.4447
carol.jacobson@dol.lps.state.nj.us

**NEW MEXICO**
David K. Thomson
Deputy Attorney General
New Mexico Attorney General's Office
408 Galisteo Street
P.O. Drawer 1508
Santa Fe, NM 87504-1508
dthomson@nmag.gov

**NEW YORK**
Dana Biberman
Christine E. Morrison
Asst. Attorney Generals
Chief, Tobacco Compliance Bureau
120 Broadway, 25th Floor
New York, NY 10271
dana.biberman@oag.state.ny.us
christine.morrison@oag.state.ny.us

**NORTH CAROLINA**
Melissa L. Trippe
Special Deputy Attorney General
Richard L. Harrison
Special Deputy Attorney General
North Carolina Dept. of Justice
P O Box 629
114 W. Edenton St., 3rd Floor
Raleigh, NC 27602
919.716.6900
mtrippe@ncdoj.gov
rharris@ncdoj.gov

**NORTH DAKOTA**
Douglas A. Bahr
Solicitor General
Office of Attorney General
500 North 9th Street
Bismark, NJ 58501-4509
701.328.3640
dbahr@nd.gov

17

**OHIO**
Susan C. Walker
Asst. Attorney General
Chief, Tobacco Enforcement Section
30 E. Broad Street, 16th Floor
Columbus, OH 43215-3428
614.387.5600
614.397.5599 (fax)
scwalker@ag.state.oh.us

**OREGON**
Lisa M. Udland
Asst. Attorney General
Oregon Dept. of Justice
1162 Court Street NE
Salem, OR 97301-4096
503.934.4400
503.373.7067 (fax)
lisa.udland@doj.state.or.us

**RHODE ISLAND**
Maureen G. Glynn
Asst. Attorney General &
Health Care Advocate
Rhode Island Dept. of Attorney General
150 S. Main Street
Providence, RI 02903-2907
401.274.4400, ext 2301
401.222.2995 (fax)
mglynn@riag.state.ri.us

**SOUTH DAKOTA**
Patricia Archer
Asst. Attorney General
South Dakota Attorney General's Office
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501
Pat.archer@state.sd.us

**UTAH**
Katherine H. Kinsman

**OKLAHOMA**
E. Clyde Kirk
Asst. Attorneys General
Tobacco Enforcement Unit
313 Northeast 21st Street
Oklahoma City, OK 73105
405.521.3921
405.522.4534 (fax)
clyde.kirk@oag.ok.gov

**PENNSYLVANIA**
Joel M. Ressler
Chief Deputy Attorney General
Chief, Tobacco Enforcement Section
P O Office of the Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
717.783.1794
jressler@attorneygeneral.gov

**SOUTH CAROLINA**
T. Parkin Hunter
Jonathan B. Williams
Asst. Attorney Generals
Office of the Attorney General
State of South Carolina
P O BXO 11549
Columbia, SC 29211-1549
803.734.3680
phunter@ag.state.sc.us
jwilliams@ag.state.sc.us

**TENNESSEE**
Rebekah A. Baker, Asst Attorney General
John H. Sinclair, Jr.
Asst. Attorney General
Stephen R. Butler,
Asst. Attorney General
Office of the Attorney General & Reporter
State of Tennessee
P.O. Box 20207
Nashville, TN 37202

**VERMONT**
Christy Taylor Mihaly

Asst. Attorney General
160 E. 300 South, 5th Floor
P O Box 140857
Salt Lake City, UT 84114-0857
kkinsman@utah.gov

**VIRGINIA**
William E. Thro
Special Counsel
Office of the Attorney General
Christopher Newport University
1 University Place
Newport News, VA 23606
757.594.7571
757.594.7864 (fax)
wthro@cnu.edu

**WEST VIRGINIA**

**WYOMING**
Douglas J. Moench
Senior Asst. Attorney General
Kenneth Miller
Asst. Attorney General
Wyoming Attorney General's Office
123 Capitol Avenue
Cheyenne, WY 82002
dmoenc@state.wy.us
kmille2@state.wy.us

**GUAM**
**PUERTO RICO**

**COMMONWEALTH BRANDS, INC.**
Robert J. Brookhiser
Elizabeth B. McCallum
Howrey, LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004-2402

Asst. Attorney General
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609-1001
cmihaly@atg.state.vt.us

**WASHINGTON**
Robert J. Fallis
Asst. Attorney General
Administration Division
Washington Attorney General's Office
800 5th Avenue, Ste 2000, TB-14
Seattle, WA 98104-3188
rustyf@atg.wa.gov

**WISCONSIN**
Christopher J. Blythe
Asst. Attorney General
Wisconsin Dept. of Justice
17 W. Main Street
P.O. Box 7857
Madison, WI 53707-7857
blythecj@coj.state.wi.us

**AMERICAN SAMOA**

**NORTHERN MARIANA ISLANDS**
**US VIRGINI ISLANDS**

**PREMIER MANUFACTURING**
Robert J. Brookhiser
Elizabeth B. McCallum
Howrey, LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004-2402

202.383.6958
202.383.7336
202.257.3541 (McCallum cell)
202.383.6610 (fax)
brookhiserb@howrey.com
mccallumb@howrey.com

Merrill S. Schell
WYATT, TARRANT & COMBS, LLP
2800 PNC Plaza
500 W. Jefferson St.
Louisville, KY 40202
502.589.5235
502.589.0309 (fax)
mschell@wyattfirm.com

**LORILLARD ("OPM")**
Irving Scher
Lee Vanvoorhis
Idit Froim
Weil Gotshal & Manges LLP
767 5th Avenue
New York, NY 10153
212.310.8120
917.825.7279 (cell)
212.310.8007 (fax)
Irving.scher@weil.com
Lee.vanvoorhis@weil.com
Idit.froim@weil.com

Charles S. Cassis
Theresa A. Canaday
Frost Brown Todd LLC
400 W. Market Street, 32nd Floor
Louisville, KY 40202
502.589.5400 (main)
568.0233 (direct)
502.581.1087 (fax)
ccassis@fbtlaw.com
tcanaday@fbtlaw.com

**LIGGETT GROUP, LLC ("SPM")**
Robert J. Brookhiser
Elizabeth B. McCallum
Howrey, LLP

202.383.6958
202.383.7336
202.257.3541 (McCallum cell)
202.383.6610 (fax)
brookhiserb@howrey.com
mccallumb@howrey.com

**RJ REYNOLDS ("OPM")**
Steve Patton
Douglas G. Smith
Elli Leibenstein
Barack Echols
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, IL 60601-6636
312.861.2406 (direct)
312.861.2000 (main)
312.861.2200 (fax)
spatton@kirkland.com
dsmith@kirkland.com
eleibenstein@kirkland.com
bechols@kirkland.com

Charles S. Cassis
Theresa A. Canada
Frost Brown Todd LLC
400 W. Market Street, 32nd Floor
Louisville, KY 40202
502.589.5400 (main)
568.0233 (direct)
502.581.1087 (fax)
ccassis@fbtlaw.com
tcanaday@fbtlaw.com

**PHILLIP MORRIS, USA, Inc. ("OPM")**
Charles S. Cassis
Theresa A. Canaday
Frost Brown Todd LLC

1299 Pennsylvania Ave., NW
Washington, DC 20004-2402
202.383.6958
202.383.7336
202.257.3541 (McCallum cell)
202.383.6610 (fax)
brookhiserb@howrey.com
mccallumb@howrey.com

Merrill S. Schell
WYATT, TARRANT & COMBS, LLP
2800 PNC Plaza
500 W. Jefferson St.
Louisville, KY 40202
502.589.5235
502.589.0309 (fax)
mschell@wyattfirm.com

400 W. Market Street, 32nd Floor
Louisville, KY 40202
502.589.5400 (main)
568.0233 (direct)
502.581.1087 (fax)
ccassis@fbtlaw.com
tcanaday@fbtlaw.com

Douglas L. Wald
Michael B. Bernstein
Eric Shapland
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
202.942.5000 (wk)
202.942.5999 (fax)
Douglas.Wald@aporter.com
Michael.B.Bernstein@aporter.com
Eric.Shapland@aporter.com

**VECTOR ("SPM")**
Robert J. Brookhiser
Elizabeth B. McCallum
Howrey, LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004-2402
202.383.6958
202.383.7336
202.257.3541 (McCallum cell)
202.383.6610 (fax)
brookhiserb@howrey.com
mccallumb@howrey.com

And I also hereby certify that on this 1st day of December, 2008, I served the foregoing on all defendants identified by their email addresses below:

'brett.delange@ag.idaho.gov'; 'beth.kittelmann@ag.idaho.gov';
'james.herrick@ag.ky.gov'; 'gary.d.wilson@verizon.net'; 'dennis.hansen@ag.state.ar.us';
'bmeyer@ag.state.ia.us'; 'dstanle@ag.state.ia.us'; 'jambroz@ag.state.ia.us';
'korme@mcdowellrice.com'; scwalker@ag.state.oh.us; 'hannamang@ag.state.la.us';
pleasants@ag.state.la.us; phillipst@ag.state.la.us; wiltonp@ag.state.la.us;
cmihaly@atg.state.vt.us; 'swalker@ag.state.oh.us'; 'AGDSpencer@ag.state.sc.us';
'aqueen@ag.state.sc.us'; 'phunter@ag.state.sc.us'; 'Daniel.Hall@ago.mo.gov';
'Earl.Kraus@ago.mo.gov'; 'gregory.barnes@ago.mo.gov'; 'lynne.fritz@ago.ne.gov';
'jafarshee@ago.state.al.us'; 'cravanelli@ago.state.nm.us'; 'dthomson@ago.state.nm.us';

21

'eric.estes@arkansasag.gov'; 'jim.depriest@arkansasag.gov'; 'mkueper@atg.state.il.us';
'donna.learned@atg.in.gov'; 'lawrence.carcare@atg.in.gov'; 'jbrill@atg.state.vt.us';
'CamC1@atg.wa.gov'; 'David.Hankins@atg.wa.gov'; 'DougV@atg.wa.gov';
'rustyf@atg.wa.gov'; 'jressler@attorneygeneral.gov'; 'bennett.rushkoff@dc.gov';
'cathy.thurstonseignious@dc.gov'; 'dennis.eckhart@doj.ca.gov';
'michelle.hickerson@doj.ca.gov'; "edavis@doj.gov.vi'; 'mphelan@doj.gov.vi';
'ppaquin@doj.gov.vi'; 'david.rienzo@doj.nh.gov'; Richard.head@doj.nh.gov;
'lisa.udland@doj.state.or.us'; 'blythecj@doj.state.wi.us'; 'gibsoncj@doj.state.wi.us';
'wellslk@doj.state.wi.us'; 'christopher.roy@dor.state.wi.us'; 'tobacco@ksag.org';
Patrick.broxterman@ksag.org; 'Greg.Harkenrider@ky.gov'; 'jmichael.jones@ky.gov';
'Mary.Lassiter@ky.gov'; 'chris_poag@law.state.ak.us';
'cynthia_drinkwater@law.state.ak.us'; 'Alex.R.Barrett@hawaii.gov';
'Earl.R.Hoke@hawaii.gov'; jennifer.willis@maine.gov; 'hackneycd@michigan.gov';
mmclaverty@mt.gov; 'ctweeten@mt.gov'; mmclaverty@mt.gov; 'kosullivan@mt.gov';
'abarefoo@ncdoj.gov'; rharris@ncdoj.gov; 'jbkelly@ncdoj.gov'; 'Klong@ncdoj.gov';
'lemory@ncdoj.gov'; 'mtrippe@ncdoj.gov'; 'rharris@ncdoj.gov';
'mtrestman@oag.state.md.us'; 'clayton_eubanks@oag.state.ok.us';
'phil_stambeck@oag.state.ok.us'; 'ryan_chaffin@oag.state.ok.us';
'gconover@oag.state.va.us'; 'mwyatt@oag.state.va.us';
'wade.hope@revenue.alabama.gov'; 'jlee@riag.ri.gov'; 'kkinsman@utah.gov';
'John.Dalporto@wvago.gov'; 'Joelyn.Gast@iowa.gov'; 'jdiaz@justicia.gobierno.pr';
'laaparicio@justicia.gobierno.pr'; 'nramos@justicia.gobierno.pr';
'janis_hales@revenue.state.ak.us'; 'johanna_bales@revenue.state.ak.us';
'mglynn@riag.state.ri.us'; 'brian.laughlin@state.co.us'; 'jan.zavislan@state.co.us';
'thomase.brown@state.de.us'; pat.archer@state.sd.us; 'daniel.champney@ag.tn.gov';
'rebekah.baker@ag.tn.gov'; 'dmoenc@state.wy.us'; 'kmille2@state.wy.us;
ann.uglietta@azag.gov; kelly.peloquin@azag.gov; 'michael.plumley@ag.ky.gov';
'tad.thomas@ag.ky.gov'; 'attorney.general@state.co.us'; wthro@cnu.edu;
jwilliams@ag.state.sc.us;'rupal.shahpalanki@po.state.ct.us; voldenburg@ag.nv.gov;
'law@guamattorneygeneral.com'; 'chris.poag@alaska.gov'; 'miag@michigan.gov';
'info@scattorneygeneral.com'; 'greg.abbott@oag.state.tx.us'; 'uag@utah.gov';
'atginfo@atg.state.vt.us'; 'kelly.ayotte@doj.nh.gov'; 'smoore@ncdoj.gov';
'kbergeron@riag.ri.gov'; curt.stokes@ago.mo.gov; 'jeanne.young@wvago.gov';
'attorney.general@state.co.us'; 'attorney.general@state.de.us'; 'smoore@ncdoj.gov';
'dena.spaulding@doj.state.or.us'; 'vfrazer@doj.vi.gov'; 'dthomson@nmag.gov';
'clarson@ag.state.ia.us'; 'janet.carter@ag.idaho.gov'; 'linda.mcewen@state.mn.us';
thomas.overton@state.mn.us; eric.estes@arkansasag.gov; 'troyking@ago.state.al.us';
jsteinwinder@ago.state.al.us; 'sbarrett@law.ga.gov'; rcohen@law.ga.gov;
'mwebb@ago.state.ms.us'; 'rchaffin@oag.ok.gov'; clyde.kirk@oag.ok.gov;
'carol.jacobson@dol.lps.state.nj.us; cathy.melitski@dol.lps.state.nj.us;
'Dana.Biberman@oag.state.ny.us'; 'christine.morrison@oag.state.ny.us';
'jlong@lvbrands.com'; 'mbell@vectorgroupltd.com'; 'neal.beaton@hklaw.com';
'barry@bboren.com'; 'mark@gopremier.com'; 'Rnuckolls@mckennalong.com';
'stanleyfriedman@mcf-esq.com'; 'nallard@pattonboggs.com';
'denise.keane@pmusa.com'; 'Douglas.Wald@aporter.com';
michael.b.bernstein@aporter.com; eric.shapland@aporter.com; 'irving.scher@weil.com';

'lee.vanvoorhis@weil.com'; 'Idit.Froim@weil.com'; 'mark@gopremier.com';
'gbaka79@yahoo.com'; 'ggahan@altadis.com'; 'jean-dominique.comolli@altadis.com';
'jack_henson@laneltd.com'; 'dlapp@oag.state.md.us'; 'jpcarriere@altadis.com';
'attysmiami@aol.com'; 'dhanrajusa@aol.com'; 'RALNASCO@aol.com';
'rangiuoli2@aol.com'; 'robwilkey@aol.com'; 'heatherj.wilson@po.state.ct.us';
'joseph.rubin@po.state.ct.us'; 'Rupal.ShahPalanki@po.state.ct.us'; 'barry@bboren.com';
'avramstc@bellsouth.net'; 'hcroemer@bellsouth.net'; 'sb@bolattigriffith.com';
'info@chancellor-tobacco.com'; 'mark@cigarettetobacco.com';
'juridico@citatabacos.com'; 'darce@compass.com.ph'; 'bunjoto.astono@djarum.com';
'grace.t.sennelius@djarum.com'; 'rachman.satya@djarum.com'; 'sigold@drl-ent.com';
'zrashwan@easternegypt.com'; 'info@farmerstobacco.com';
'jennifer@farmerstobacco.com'; 'davidchor@gdgroupinc.com';
'dominicchu@gdgroupinc.com'; 'mark@gopremier.com'; 'scoleman@gopremier.com';
'ayh@harksco.com'; 'nbeaton@hklaw.com'; 'brian.caldwell@dc.gov';
'brookhiserb@howrey.com'; 'mccallumb@howrey.com'; 'arnoldh3151@ipass.net';
'sdaniel@ipass.net'; 'amarks@kasowitz.com'; 'spatton@kirkland.com';
dsmith@kirkland.com; eleibenstein@kirkland.com; bechols@kirkland.com;
'bhavani.parameswar@kmm-inc.com'; 'markcassar@kretek.com';
'mikehousego@kretek.com'; 'seancassar@kretek.com'; 'jginsburg@levin-ginsburg.com';
'jweis@levin-ginsburg.com'; dbahr@nd.gov;'bgarner@libertybrandsllc.com';
'sfeit@libertybrandsllc.com'; 'acalso@lignum2.com'; 'kirinaga@lignum2.com';
'tmeyer@lignum2.com'; 'bmcginn@lortobco.com'; 'jlong@lvbrands.com';
'annette.boye@mac-baren.com'; 'per.buch@mac-baren.com'; 'stanleyfriedman@mcf-
esq.com'; 'rnuckolls@mckennalong.com'; 'exportaciones@montepaz.com.uy';
'jamesnooney@montepaz.com.uy'; 'moldes@montepaz.com.uy'; 'abrams52@msn.com';
's-m-johnson@msn.com'; 'wrtco@msn.com'; 'PLEVIN@NAAG.ORG';
'lcarbone@natsherman.com'; 'rmaraia@natsherman.com'; 'jlopezm@palermo.com.py';
'nallard@pattonboggs.com'; 'obermann@planta-tobacco.de'; 'rau@planta-tobacco.de'
'wiesenhuetter@planta-tobacco.de'; 'Anthony.Reale@pmusa.com';
'Blake.p.Auchmoody@pmusa.com'; 'denise.keane@pmusa.com';
'Emmitt.n.davis@pmusa.com'; 'poeschl@poeschl-tobacco.com';
'dspitzer@proskauer.com'; 'winnersales@qwest.net'; 'mckimt@rjrt.com';
'jfranzino@sfntc.com'; 'mjohnson@sfntc.com'; 'william.hunter@skofirm.com';
'dana.m.papillion@us.pwc.com'; 'ryan.harrell@us.pwc.com'; 'cathanasia@usthq.com';
'rkohlberger@usthq.com'; 'fferguson@valottery.com'; 'mbell@vectorgroupltd.com';
'dumbreit@von-eicken.com'; 'umbreit@von-eicken.com'; 'mgkoplow@wlrk.com';
'inttobacco@yahoo.com'; 'shigeru_jr@yahoo.com'; mschell@wyattfirm.com;
ccassis@fbtlaw.com; tcanaday@fbtlaw.com;


 /s/ John K. Bush
COUNSEL FOR PLAINTIFF
VIBO CORPORATION, INC., d/b/a
GENERAL TOBACCO

23

3121360_1.doc