UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| VIBO CORPORATION, INC. d/b/a<br>GENERAL TOBACCO | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3:08-cv-571-C |
| v. | ) ) | |
| JACK CONWAY, in his official capacity<br>as Attorney General of the Commonwealth of<br>Kentucky, *et. al.* | ) ) ) ) | |
| Defendants. | ) ) ) ) | (Electronically Filed) |

## PLAINTIFF'S REPLY TO DEFENDANT SPMS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Respectfully submitted,


John K. Bush
Christie A. Moore
Helen A. Thompson
Brigid O. Gies
GREENEBAUM DOLL & McDONALD PLLC
3500 National City Tower
Louisville, KY 40202
(502) 589-4200

COUNSEL FOR PLAINTIFF,
VIBO CORPORATION, INC.
D/B/A GENERAL TOBACCO

## Introduction

Plaintiff, Vibo Corporation d/b/a General Tobacco, respectfully replies to the grandfathered SPMs' Opposition to Plaintiff's preliminary injunction motion.[1] This memorandum addresses certain issues pertaining to the likelihood-of-success factor for the preliminary injunction: namely, this memorandum rebuts Defendants' arguments regarding waiver and immunity as well as Defendants' arguments against the constitutional and fraudulent inducement claims.

## Argument

In addressing the likelihood-of-success factor, the Court is not required to determine General Tobacco's ultimate success to some predetermined mathematical probability, particularly when, as here, other factors weigh heavily in favor of injunction. See Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982); Express One Int'l, Inc. v. U.S. Postal Serv., 814 F. Supp. 87, 88 (D.D.C. 1992). In fact, General Tobacco is not required to show 50 percent or greater chance of success. Medtronic v. Gibbons, 527 F. Supp. 1085, 1092 (D. Minn. 1982), aff'd, 684 F.2d 565 (8th Cir. 1982). Where, as here, the harm that may occur to the plaintiff is sufficiently serious, it is only necessary that the plaintiff have a "fair chance of success" on merits. William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir. 1975); see also Cox v. Brown, 498 F. Supp. 823, 828 (D.D.C. 1980) (if harm is substantial, relief may be granted even if court's view of merits is markedly different than the plaintiff's). Based on this authority, and when the limited relief sought is taken into account, General Tobacco has more than met its burden for entry of injunctive relief.

## I.     DEFENDANTS' WAIVER ARGUMENTS FAIL

With respect to Defendants' assertion of constitutional waiver, General Tobacco has already explained why that contention fails. See Plaintiff's Opposition To Defendants' Motions To Dismiss

---

[1] General Tobacco hereby incorporates by reference its Replies to Defendant Attorneys General's and OPMs' Responses in Opposition to Plaintiff's Motion for Preliminary Injunction. Plaintiff also responds herein to arguments of Defendant Attorneys General and OPMs regarding issues addressed herein.

Pursuant To Federal Rules Of Civil Procedure 12(b)(1) and 12(b)(6) [DE 239] ("Pl. Opp.") at 17-19).  To summarize, first, Defendants' continued reliance on MSA § XV is misplaced.  (See OPMs' PI Opp. [DE 254-2] at 17-18; SPMs' PI Opp. [DE 240] at 29, n. 31).  This provision does not, on its face, begin to amount to waiver of any of General Tobacco's constitutional claims alleged here and courts will indulge every presumption against such a waiver.  (See Pl. Opp. at pp. 17-19); see e.g., Barden Detroit Casino, L.L.C. v. City of Detroit, 230 F.3d 848, 855 (6th Cir. 2000); Johnson v. Zerbst, 304 U.S. 458, 464 (1938); Bayo v. Chertoff, 535 F.3d 749, 755 (7th Cir. 2008).

Second, waiver clearly does not apply given the non-release provision in MSA § XVIII(t), which provides that General Tobacco does not release any claims that it may have against non-released parties.  See MSA § XVIII(t).  Third, Lockyer v. R.J. Reynolds Tobacco, 116 Cal.App.4th 1253 (2004), is inapposite because that case involved a contention by Defendant R.J. Reynolds that an injunction limiting its **First Amendment** rights was contrary to the language of the MSA.  Id. Clearly, the Lockyer court's decision does not support Defendants unavailing contention that General Tobacco has waived all challenges under the MSA.[2]  Third, § XVIII(l) of the MSA urges that General Tobacco not assist or encourage any challenge to the MSA by "**any other person**". (Emphasis added).  This provision does not support any waiver given that it speaks to Participating Manufacturers' ("PMs") aiding "any other person[,]" meaning that it only applies to persons not parties to the MSA that challenge its enforceability.

Equally unavailing is Defendants' contention that General Tobacco has waived its antitrust claims, as no contract could lawfully effect such a waiver.[3]  Courts are explicit in their position that

---

[2] It is a foregone conclusion that General Tobacco is not challenging the MSA's restrictions on its commercial speech rights to target a certain class of smokers.  Indeed, General Tobacco believes that a restriction on advertisements to the youth to be a valid purpose and supports the purpose of the MSA to eliminate youth smoking.  General Tobacco is challenging the violations of its due process and equal protection rights vis-a-vis other PMs, which clearly have not been waived under MSA § XV.

[3] In fact, the provisions of the MSA clearly state that General Tobacco may pursue any and all rights and remedies it may have against Defendants.  See e.g., MSA § XVIII(t).

2

treble damages under the federal antitrust laws are a non-waivable substantive right. See Pl. Opp. at 7-9; see e.g., Kristian v. Comcast Corp., 446 F.3d 25, 47 (1st Cir. 2006); Gaines v. Carrollton Tobacco Bd. of Trade, Inc., 386 F.2d 757, 759 (6th Cir.1967); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 fn. 19 (1985) (internal citations omitted); Fox Midwest Theatres v. Means, 221 F.2d 173, 180 (8th Cir. 1955); James C. Justice Cos., Inc. v. Deere & Co., 2008 WL 828923, 4 (S.D.W.Va. 2008).

## II.   DEFENDANTS' IMMUNITY ARGUMENTS FAIL

### A.   General Tobacco, As A Signatory To The MSA, Cannot Be Barred By Any Immunity From Suing Other Parties To The Agreement Under Any Principle of Law Or Equity

It is unheard of that a party to a contract, which has paid hundreds of millions of dollars in consideration under that agreement, should now be barred by judicially-created immunities from seeking relief from the continued abuse of certain provisions of the contract by other signatories. But this is exactly what Defendants are asking this Court to do here by arguing entitlement to Parker and Noerr-Pennington exemptions.  By so doing, Defendants raise issues of first impression.

Defendants do not cite a single Parker or Noerr-Pennington case where a court has barred claims where the plaintiff, as here, had contracted directly with the government entities and private parties being sued.  When the government enters into a contract with a private party, it is treated like a private party with regard to its contractual dealings.  See United States v. Winstar Corp., 518 U.S. 839, 886-87, 895 (1996) (rejecting the government's asserted sovereign immunity defense against parties with whom it contracted as frivolous); United States v. Moscow-Idaho Seed Co., 92 F.2d 170, 173 (9th Cir.1937) (in addressing contractual dealings between the government and private parties, the court found that the government's "adversary is entitled to set up any defense which would be available to him were his opponent another citizen instead of the government."); Applegate v. United States, 52 Fed.Cl. 751, 759 (Fed. Cl. 2002) (citing decisions which effectively hold that "the government may not invoke sovereign immunity in seeking to avoid the terms of a

3

duly-authorized settlement agreement."); <u>United States v. Bostwick</u>, 94 U.S. 53, 66 (1877) ("The United States, when they contract with their citizens, are controlled by the same laws that govern the citizen in that behalf."); <u>Cooke v. United States</u>, 91 U.S. 389, 398 (1875) (recognizing that when the United States "comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there.").

Although these cases address sovereign immunity of the federal government, they are applicable, by analogy, here where Defendants have contracted with a private party, General Tobacco.[4] Defendants have cited to no case applying <u>Parker</u> or <u>Noerr-Pennington</u> immunity where the plaintiff was in a contractual relationship with the defendants. Defendants should not be allowed to enforce and assert their rights while simultaneously attempting to void General Tobacco's own rights. <u>United States v. Bankers Ins. Co.</u>, 245 F.3d 315, 323 (4th Cir. 2001) ("Sovereign immunity does not permit the Government to sue a third party and then pick and choose the judicial constraints and contractual obligations with which it will abide.") Moreover, even if <u>Parker</u> and <u>Noerr-Pennington</u> were applicable here, Defendants cannot qualify for these immunities, as discussed below.

**B.**     **<u>Noerr-Pennington Does Not Bar General Tobacco's Claims</u>**

Defendants strenuously argue that courts are uniform in holding their conduct in negotiating, executing and implementing the MSA is protected by <u>Noerr-Pennington</u> and, thus, all of General Tobacco's claims are barred as a matter of law. (<u>See</u> OPMs' PI Opp. at 18; SPMs' PI Opp. at 19-20). This contention could not be further from the truth because courts interpreting the MSA have never found that where Defendant manufacturers' misuse and exploit a provision of the MSA -

---

[4] The doctrine of sovereign immunity is at the very least grounded in the Eleventh Amendment of the Constitution. <u>Parker</u> and <u>Noerr-Pennington</u> are judge-made exemptions which courts have been cautioned to construe very strictly. By analogy to the sovereign immunity cases, <u>Parker</u> and <u>Noerr-Pennington</u> doctrines, creatures of case law, have no applicability to a dispute between parties to a contract. If the Supreme Court has rejected the assertion of a constitutional immunity in situations where the federal government enters into a contract with a private party, this Court should follow suit with respect to both <u>Parker</u> and <u>Noerr-Pennington</u>.

when in fact they do not have the "rights" they assert they have under that provision - their actions are nonetheless protected.  Nor could Defendants cite to any such cases because it is clear under established antitrust jurisprudence that such actions are not immunized petitioning activity under Noerr-Pennington.

   "In most contract cases the question will be whether the government has been made the victim of anticompetitive conduct. If a monopolist uses his market power to dictate the terms of trade to the government . . . no legitimate petitioning conduct would be involved, and there would be no Noerr-Pennington protection." Greenwood Utilities Com'n v. Mississippi Power Co., 751 F.2d 1484, 1505-06 (5th Cir. 1985).  Defendant Attorneys General have, indeed, been made victims of the OPMs and grandfathered SPMs' anticompetitive conduct.  Through their false assertion of rights under the LMFN provision, the OPMs and grandfathered SPMs are dictating the terms on which Defendant Attorneys General can trade with Defendant manufacturers' competitors like General Tobacco.  Courts recognize that Noerr-Pennington only applies to actions that are "the consequence of legislation or other governmental action, not when it is the means for obtaining such action." PTI, Inc. v. Philip Morris, Inc., 110 F.Supp.2d 1179, 1195 (C.D.Cal. 2000) (emphasis added).

   Furthermore, the district court and Ninth Circuit decisions in Sanders, which Defendants cite ad nauseum to argue that Noerr-Pennington protects them from antitrust liability, are easily distinguishable because the plaintiff in that case did not allege that any MSA term had been misused.  Indeed, the Sanders courts based their holdings on the assumption that the alleged conduct of the defendants was consistent with the MSA.  See generally, Sanders v. Lockyer, 365 F.Supp. 2d 1093 (N.D. Cal. 2005); Sanders v. Brown, 504 F.3d 903 (9th Cir. 2007).

   The OPMs and SPMs' purported exercise of their LMFN rights is not political expression to which the Noerr-Pennington doctrine applies.  Their repetitive exploitation of the LMFN provision and repeated threats to invoke LMFN "rights" if Defendant Attorneys General execute the

Amended Adherence Agreement or take any other steps to equalize access to the MSA is an abuse of process. See Liggett Group, Inc. v. Commonwealth of Kentucky, 232 S.W.3d 559 (Ky.App. 2007) (holding that the original Adherence Agreement between General Tobacco and Defendants Attorneys General in no way implicates the grandfathered SPMs' purported LMFN rights.). The persistent claims by the OPMs and grandfathered SPMs are baseless and they compromise the integrity of the MSA process. The OPMs and grandfathered SPMs conduct thus falls outside of Noerr-Pennington protection.[5]

The cases which Defendants cite for the proposition that their continued misuse of the LMFN provision is immune by the Noerr-Pennington doctrine all suffer from various flaws and all of them have at least five salient features which undermine Defendants' position: (1) they all involved plaintiffs that were non-signatories to the MSA; (2) none of those plaintiffs had paid hundreds of millions of the dollars into the MSA – in fact they had paid nothing; (3) none of those cases involved an allegation regarding the constant exploitation of the LMFN provision; (4) none of those cases involved an essential facilities claim; and (5) none of those cases involved a challenge by an SPM to the irrational grandfathered SPMs' exemptions and other preferences under the MSA. As such, Defendants' contention that the present action is identical to other actions is outright false.

Another critical distinction is that five of the decisions cited by Defendants predate the repeal of the allocable share provision in the Escrow Statutes and thus predate the time which the MSA became an essential facility and Defendants misuse of their LMFN "rights." See PTI, supra; Hise v. Philip Morris, Inc., 46 F.Supp.2d 1201 (N.D.Okla. 1999); Forces Action Project LLC v. California, 2000 WL 20977 (N.D.Cal. 2000); A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc., 263 F.2d 239 (3d Cir. 2001); Mariana v. Fisher, 338 F.3d 189 (3d Cir. 2003); Sanders v.

---

[5] See California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 513 (1972) (finding that one baseless claim may go unnoticed but a pattern of baseless claims is an abuse of process and "actions of that kind cannot acquire immunity by seeking refuge under the umbrella of 'political expression"); Israel v. Baxter Laboratories, Inc., 466 F.2d 272, 278 (D.C. App. 1972) ("[n]o actions which impair the fair and impartial functioning of an administrative agency should be able to hide behind the cloak of an antitrust exemption.")

Lockyer, supra. Also, in those cases involving a direct challenge to the MSA, the plaintiffs, which were non-signatories to the MSA, sought to invalidate the agreement as a whole and the courts held that Noerr-Pennington applied only to negotiating, executing and implementing the MSA in that context. See Forces Action, 2000 WL 20977 at *8; A.D. Bedell, 263 F.3d at 252; Hise, 46 F.Supp.2d at 1206-07; PTI, 110 F.Supp.2d at 1190-91. General Tobacco is challenging the abuse of certain terms of the MSA. The challenged conduct was not a negotiation, an execution or an attempt to implement the MSA. In fact, Defendant manufacturers' manipulation of the LMFN provision serves to undermine Defendant Attorneys General's attempt to implement the MSA properly.

Defendants' cases do recognize the sham exception to Noerr-Pennington, which applies "when persons use the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon." City of Columbia v. Omni Outdoor Adver., Inc., 499 U.S. 365, 380 (1991). That is precisely what Defendant manufacturers are doing here: they are interfering with the governmental process (i.e. implementation of the Amended Adherence Agreement) by misusing the LMFN provision as an anticompetitive weapon.

Nor does S&M Brands, Inc. v. Summers, 393 F. Supp. 2d 604 (M.D. Tenn. 2005), help Defendants' argument. In that case, the plaintiffs' allegations were directed at enforcement and enactment of the Tennessee tobacco statutes and the retroactive application of the allocable share provision. Id. at 610. The only mention of a possible challenge to the MSA was in NPMs' Prayer for Relief, where they sought a declaration that the MSA, **as a whole**, violates Sherman Act. Id.[6] Such a claim is obviously not what General Tobacco has alleged here.

---

[6] With regard to General Tobacco's Equal Protection and Due Process claims, cases cited by Defendants are also irrelevant because those cases confine those challenges to the Escrow Statutes. PTI, 110 F. Supp. 2d at 1187; S&M Brands. General Tobacco has not challenged any Escrow Statutes.

Thus, contrary to what Defendant manufacturers would have this Court believe, courts across the country have **not** held the Noerr-Pennington doctrine applicable in the circumstances alleged here: namely where the plaintiff is a signatory to the MSA and challenges other signatories' abuse of the MSA process by threatening the Settling States from taking action with baseless assertions of LMFN "rights." Nor have courts across the country held Noerr-Pennington applicable where (1) the MSA is claimed to be an essential facility and (2) the grandfathered exemption violates the Equal Protection clause by irrationally treating similarly-situated SPMs differently.

### C.    The State-Action Exemption Is Inapplicable Here And, Therefore, Does Not Bar General Tobacco's Claims

Defendants also fail to argue persuasively for dismissal of the antitrust claims based on state-action immunity. "[L]ike other judicially-imposed exemptions from the antitrust laws, the state-action immunity doctrine must be narrowly construed." First American Title Co. v. Devaugh, 480 F.3d 438, 445 (6th Cir. 2007). See also F.T.C. v. Ticor Title Ins.Co., 504 U.S. 621, 636 (1992) ("[W]e have held that state-action immunity is disfavored...."); Goldfarb v. Virginia State Bar, 421 U.S. 773 (1975) ("[T]here is a heavy presumption against implicit exemptions."). Even if the Court finds that the state-action exemption does apply, Defendants cannot meet the two-part test articulated by the Supreme Court in California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97 (1980) ("Midcal").

It should first be noted that Defendants argue profusely that "the MSA is not a statute promulgated by the state legislature. Rather it is a settlement agreement that disposed of pending litigation. As such, it is simply not the sort of State activity that the Commerce Clause was designed to reach." (See OPMs PI Opp. at 29). If Defendants claim that the MSA is not state action for purposes of the Commerce Clause, then they should not be allowed to argue that it is state action for the purposes of Parker immunity. In any event, General Tobacco can demonstrate that

8

Defendants are required to but cannot meet the Midcal analysis. (See Pl. Opp. at 9-11 for a more in depth argument regarding the Midcal analysis.)

Defendant manufacturers ignore the two-part analysis, which is a tell-tale sign that they cannot meet the Midcal test. Defendants claim that the MSA is state action and therefore they do not have to meet Midcal. (See OPMs' PI Opp. at 18-19; SPMs' PI Opp. at 20-21). This assertion may be true if General Tobacco were indeed complaining about state action. General Tobacco is, instead, arguing that the Defendant manufacturers' actions have caused it harm. Defendant Attorneys General want to take action to assist General Tobacco but are prevented from doing so by Defendant manufacturers' wrongful actions. The OPMs and grandfathered SPMs, therefore, have to meet the Midcal test because they are private parties claiming that the state-action exemption protects their wrongful exploitation of the LMFN provision. See Southern Motor Carriers Rate Conf., Inc. v. U.S., 471 U.S. 48 (1985) (where private parties claim state-action exemption protects their anticompetitive conduct, they have to meet the two-pronged Midcal test.); Ticor, 504 U.S. at 633. (finding that the Midcal two-pronged analysis is "applicable to private parties' claims of state action immunity"). Indeed, the Sixth Circuit requires nothing less where, as here, defendants are private entities. See Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 536 (6th Cir. 2002) ("to assert a Parker defense successfully, private parties must establish both a clearly articulated state policy to authorize anticompetitive conduct and active state supervision of private anticompetitive conduct").

The cases that Defendant manufacturers cite for the proposition that they need not meet the Midcal test are all clear in that they do not address any alleged misuse by OPMs' and grandfathered SPMs' of any MSA term such as the LMFN provision. Immunity, in those cases, is based on the parties' "attempts to implement the MSA", not to misuse it. Defendants' cases most assuredly do not support state-action immunity for attempts by certain private parties to gain an anticompetitive

advantage over other parties through false assertion of "rights" under an MSA provision. None of those courts were faced with the issues presented here.

### III.   GENERAL TOBACCO IS LIKELY TO SUCCEED ON ITS CONSTITUTIONAL CLAIMS

####    A.   Equal Protection Claim

General Tobacco has fully rebutted Defendants' issues concerning the Equal Protection claim. (See Pl. Opp. at 20-27). Defendant OPMs make six flawed arguments regarding General Tobacco's Equal Protection claim. (See OPMs' PI Opp. at 24-27.)

First, to the extent Defendants are arguing estoppel with respect to General Tobacco's constitutional claims on the basis that it has retained benefits of the MSA, such an argument is idle in light of the Supreme Court's decision in Kadrmas v. Dickinson Pub. Schs., 487 U.S. 450, 456 (1988). In Kadrmas, the Supreme Court limited the doctrine of constitutional estoppel, which Defendants invoke here, "to situations where the plaintiff owes its very existence to the statute it challenges." Webster v. Fulton County, Ga., 44 F. Supp. 2d 1359, 1374 (N.D.Ga. 1999), aff'd in part and vacated in part on other grounds, Webster v. Fulton County, 283 F.3d 1254 (11th Cir.(Ga.). The Webster court found the invocation of the constitutional estoppel argument meritless where the plaintiffs did not owe their very existence to the statute they were challenging even though the plaintiffs had benefited from the MFBE Program at issue. Id. at 1374-75. General Tobacco is not a creature of the MSA and, thus, it is not estopped.

Second, Defendants want to have their cake and eat it too with respect to their contention that the MSA deserves a presumption of constitutionality. In arguing this, Defendant OPMs have cited cases dealing with a statute regarding attorneys fees in black lung litigation. They find it appropriate to rely on such cases in the context of equal protection but not in the commerce clause, in which they argue profusely that "the MSA is not a statute promulgated by the state legislature. Rather it is a settlement agreement that disposed of pending litigation. As such, it is simply not the

10

sort of State activity that the Commerce Clause was designed to reach." (See OPMs' PI Opp. at 29). Defendants, thus, want this Court to apply a presumption of validity of state statutes with regard to its Equal Protection argument, but would rather take the MSA outside of the state statute context with regard to its Commerce Clause claim. Defendants cannot have it both ways.

Third, General Tobacco's constitutional claims are not identical to those claims which have been rejected by courts across the country. None of those cases involved parties to the MSA and none of them challenged the disparate treatment of one group of SPMs versus another group of SPMs. Fourth, the contention that the Settling States had a legitimate goal in limiting the grandfather exemption to existing manufacturers because they only had a small percentage of the marketplace and had largely not been sued for their past actions is disingenuous. Liggett, a grandfathered SPM with an exempt share that allowed it almost $1 billion in exempt sales from 1999 through 2007, was sued by numerous States for its alleged bad acts. General Tobacco, on the other hand, could not have been sued for past actions because did not exist and further has not been sued by any State on any theory raised in the lawsuits against Liggett and the OPMs that produced the MSA. Fifth, the provision that Defendants argue General Tobacco "took advantage of" (i.e., the Allocable Share Release provision of the original Escrow Statutes) was created by the OPMs and Defendant Attorneys General and was perfectly legal. Defendants cannot now mischaracterize as a "bad act" General Tobacco's decision to compete as an NPM in compliance with the lawful provision during the time the provision was in effect.

Sixth, the contention that somehow General Tobacco's present financial difficulties justify its singling out to escrow its quarterly payment is outrageous and improper. It is a post-hoc rationalization that is not permitted by constitutional law and will not legitimize and rationalize an irrational government act. See Brill v. Hedges, 783 F. Supp. 340, 346 (S.D. Ohio 1991) (concluding under an equal protection rational basis review "that the difference in treatment given to married and unmarried mothers by" a state statute "is simply unreasonable, irrational, and

11

capricious, and most assuredly not related to the realization of any legitimate state interest" and rejecting "an attempt at post hoc rationalization of an otherwise irrational statute."); U.S. R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 187 (1980) ("Over the past 10 years, this Court has frequently recognized that the actual purposes of Congress, rather than the *post hoc* justifications offered by Government attorneys, must be the primary basis for analysis under the rational-basis test."); Weinberger v. Wiesenfeld, 420 U.S. 636, 648 n. 16 (1975) ("This Court need not in equal protection cases accept at face value assertions of legislative purposes, when an examination of the legislative scheme and its history demonstrates that the asserted purpose could not have been a goal of the legislation."). Finally, Defendants' contention that Plaintiff's equal protection claim has been rejected by courts across the nation is fictitious. Defendants can point to no case which has addressed the differential treatment between similarly-situated SPMs. Cases cited by Defendants focus on the treatment of NPMs versus SPMs.

**B.    Due Process**

Some additional words should be said about General Tobacco's Due Process claim. (See also Pl. Opp. at 27-28). Plaintiff claims that the consent decrees implementing the MSA violate Due Process because (1) the manufacturers that were parties to those decrees (the OPMs and Liggett) were not fair and adequate representatives of the interests of other tobacco product manufacturers such as General Tobacco that receive discriminatory financial treatment; and (2) the consent decrees provide no opportunity for these other tobacco product manufacturers to be heard regarding the discriminatory payment structure of the MSA as implemented by the decrees. Contrary to what Defendants argue, General Tobacco did not need a property interest in existence when the consent decrees were entered to bring this claim. The consent decrees have continuing impact that adversely affects property interests created after they were entered, and the fact that the property interest did not arise until after the decrees were entered is no bar to a Due Process claim that challenges them. Cf. In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158, 161 (4th Cir. 1991) (if the

settlement is intended to preclude further litigation by absent persons, due process requires that their

interests be adequately represented and protected).  Indeed, courts have recognized that an

individual's Due Process rights may be violated if it is purportedly bound by a settlement agreement

that was entered when it had not yet suffered the injury required to become a member of the class.

See Stephenson v. Dow Chemical Co., 273 F.3d 249, 258 (2d Cir. 2001), judgment aff'd in part,

vacated in part, Dow Chemical Co. v Stephenson, 539 U.S. 111, 112 (2003) (Vietnam veterans who

developed injuries as a result of exposure to Agent Orange were not adequately represented in the

prior class action because their injuries did not manifest until well after the judgment and after

depletion of the settlement funds and to bar their claims by res judicata would be a violation of their

due process rights).  In light of General Tobacco's specific claims, the MSA cases cited by

Defendant manufacturers are irrelevant because they address whether the escrow required of NPMs

under Escrow Statutes is a pre-judgment attachment of property that violates Due Process.  That is

not the issue here.

### C.     Commerce Clause

With respect to the claims under the Commerce Clause, Defendant OPMs' contentions are

also not well taken.  (See Pl. Opp. at 28-30).  First, the OPMs shrewdly attempt to transform and

obfuscate General Tobacco's argument about the MSA's impermissible extraterritorial effect into

an argument concerning residency.  General Tobacco is simply arguing that a grandfathered

exemption based on the duration of a company in the cigarette manufacturing industry violates the

Commerce Clause because it unconstitutionally bestowed benefits based on the timing of the PMs'

existence and the length of their residence, as courts have found in other similar cases. Cf.  Southern

Wines and Spirits of Tex., Ltd. v. Steen, 486 F. Supp. 2d 626 (W.D. Tex. 2007).

Second, the OPMs employ a red herring argument without any legal support by asserting

that the MSA does not amount to a state "regulation" of interstate commerce because the MSA is a

"voluntary agreement" and not a state statute.  The illusory "voluntary agreement" label trumpeted

by Defendants is immaterial because the labeling of the unconstitutional conduct is not the focus of courts. Instead, the "critical inquiry" for determining whether an impermissible extraterritorial effect exists in violation of the Commerce Clause is "whether the practical effect of the regulation is to control conduct beyond the boundaries of the State." Healy v. Beer Inst. Inc., 491 U.S. 324, 336-337 (1989). The timing and existence requirement of the grandfathered exemptions along with the payments made to the Settling States under the MSA (discussed infra) have the practical effect of controlling conduct beyond the boundaries of the State -- thus, the Commerce Clause violation.

Third, the OPMs continue to insist that the MSA payment obligations are not taxes for Commerce Clause purposes when their attributes clearly indicate otherwise. In fact, the MSA payments are taxes because they are based on the number of units (cigarettes) sold nationwide, the payments are escrowed, and they are heavily regulated by the Settling States while in escrow.[7] In analyzing another constitutional claim, the Sixth Circuit recently held that these kind of escrowed payments from tobacco companies were close enough to a "tax" for purposes of qualifying for a constitutional argument. See S & M Brands, Inc. v. Cooper, 527 F.3d 500 (6th Cir. 2008) (state escrow tax payment constituted a "quasi-tax" sufficiently amounting to a tax for purposes of qualifying for a sovereign immunity claim). Under the rationale of S & M Brands, the money collected by the Settling States based upon General Tobacco's sales nationwide constitutes a tax that that is subject to and violates the Commerce Clause as a tax on interstate transactions.[8]

Finally, the MSA cases cited by Defendants are clearly not on point. General Tobacco is challenging the limited aspect of MSA's payment structure that discriminates against non-

---

[7] The MSA payments are also like taxes because the Settling States use them to fund general budget matters rather than for public health, which was purportedly the subject of the MSA. Indeed, between 2000 and 2006, only 30 percent of MSA proceeds was spent on healthcare and less than 4 percent went to anti-smoking efforts. (Am. Com. ¶ 6 n.3).

[8] In their response (see OPMs' PI Memo at 31), the OPMs suggest that the MSA does not create a national tax and, therefore, does not implicate the Compact Clause. In fact, for reasons explained in Pl. Opp. at 31-32, the MSA does indeed create a national tax, and this national tax "encroaches upon or interferes with the just supremacy of the United States" in violation of the Compact Clause. See U.S. Steel Corp. v. Multistate Tax Comm'n, 434 U.S. 452, 168 (1978).

grandfathered SPMs under Commerce and Compact Clauses. Defendants' cases address whether entire MSA payment structure violates Commerce and Compact Clauses.

### D.    Fraudulent Inducement

With respect to the fraudulent inducement claim, Defendants argue the same contentions in their motions to dismiss, and General Tobacco has fully responded to these claims. (See Pl. Opp. at 34-40). Additionally, Defendants argue that the Settling States did not have to disclose the extent of grandfathered exemption because they owed no fiduciary duty to General Tobacco. (See OPMs' PI Opp. at 31; SPMs' PI Opp. at 31). Even assuming this were true, it is equally true that Defendant Attorneys General did owe a duty of good faith and fair dealing, which is implied in every contract, and failed to fulfill that duty. See Ranier v. Mount Sterling Nat. Bank, 812 S.W.2d 154, 156 (Ky. 1991). Further, a duty to disclose can be created "when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure." Dennis v. Thomson, 43 S.W.2d 18 (Ky. 1931). This was the case with the disclosure of the grandfathered exemptions but the withholding as to value of those exemptions. Finally, contrary to OPMs' argument, statements as to diligently enforcing the Escrow Statutes were statements of present conduct, but even if they pertained to the future as well, a "statement as to future conduct may form the basis for a misrepresentation claim if made with the intent to induce the other party to enter into a contract." Davis v. Siemens Medical Solutions USA, Inc., 399 F. Supp. 2d 785, 800 (W.D. Ky. 2005).[9]

### Conclusion

For the foregoing reasons and for those set forth in General Tobacco's Opening Memorandum and Replies to Defendant Attorneys General and the OPMs Responses in Opposition to Plaintiff's Motion for Preliminary Injunction, incorporated herein by reference, General Tobacco respectfully requests that the Court grant its Motion for Preliminary Injunction.

---

[9] Finally, Defendants offer nothing to rebut General Tobacco's arguments that it has a viable claim under 42 U.S.C. § 1983, that Defendant Attorneys General have waived Eleventh Amendment Immunity for the fraudulent inducement claim and that this claim is viable. (See Pl. Opp. at 32-33).

Respectfully submitted,


/s/ John K. Bush.
John K. Bush
Christie A. Moore
Helen A. Thompson
Brigid O. Gies
GREENEBAUM DOLL & McDONALD PLLC
3500 National City Tower
Louisville, KY 40202
(502) 589-4200

COUNSEL FOR PLAINTIFF,
VIBO CORPORATION, INC.
D/B/A GENERAL TOBACCO

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2008, I served the foregoing on all counsel of record identified below in the manner specified, via transmission of Notice of Electronic Filing generated by CM/ECF to the following:

**ALABAMA**
James M. Steinwinder
Assistant Attorney General
Office of Attorney General
500 Dexter Avenue
Montgomery, AL 36130
334.353.9131
jsteinwinder@ago.state.al.us

**ALASKA**
Chris Poag
Assistant Attorney General
P.O. Box 110300
Juneau, AK 99801
907.465.4132
Chris.poag@alaska.gov

**ARIZONA**
Kelly M. Peloquin
Ann Uglietta
Assistant Attorney General
Arizona Attorney General's Office
1275 W. Washington Street
Phoenix, AZ 85007-2926
317.232.6239
Kelly.peloquin@azag.gov
Ann.uglietta@azag.gov

**ARKANSAS**
Eric B. Estates
Regina Harelson
Assistant Attorney General
323 Center Street, Ste 200
Little rock, AR 72201
501.682.8090
Eric.estes@arkansasag.gov

**CALIFORNIA**
Michelle Hickerson
Deputy Attorney General
Public Rights Division
110 W. A Street, Ste 1100
San Diego, CA 92101
Michelle.hickerson@doj.ca.gov

**COLORADO**
Brian L. Laughlin
Assistant Attorney General
Tobacco Settlement Enforcement
Colorado Department of Law
1525 Sherman Street – Seventh Floor
Denver, CO 80203
303.866.3994
303.866.4916 (fax)
Brian.laughlin@state.co.us

**CONNECTICUT**
Rupal Shah Palanki
Asst. Attorney General
Office of the Attorney General
55 Elm Street, P O Box 0120
Hartford, CT 6141-0120
860.808.5270
860.808.5385 (fax)
Rupal.shahpalanki@po.state.ct.us

**DELAWARE**
Thomas Brown
Deputy Attorney General
Delaware Deputy of Justice
820 North French Sate 6th Floor
Wilmington, DE 19801
302.577.8400
thomase.brown@state.de.us

**DISTRICT OF COLUMBIA**
Brian R. Caldwell
Asst. Attorney General
Office of the Attorney General
  For the District of Columbia
4441 Fourth Street, NW Ste 650 N
Washington, TC  20001
202.727.6211
Brian.caldwell@dc.gov


**HAWAII**


**ILLINOIS**
Marylyn A. Keuper
Chief, Tobacco Enforcement Bureau
Office of the Attorney
500 S. 2nd Street
Springfield, IL 62706
217.785.8541
217.524.4701 (fax)
mkueper@atg.state.il.us

**IOWA**
Kristie Remster Orme
McDowell, Rice, Smith & Buchanan, PC
605 W. 47th Street, Ste 350
Kansas City, MO 64112-1905
korme@mcdowellrice.com


**KENTUCKY**
Hon. Michael Plumley
James M. Herrick
Hon. Tad Thomas
Office of the Attorney General

**GEORGIA**
Sidney R. Barrett, Jr.
Senior Asst. Attorney General
Robin G. Cohen
Asst. Attorney General
Office of the Attorney General
40 Capital Square, SW
Atlanta, GA 30334
404.656.3202
404.656.4190
sbarrett@law.ga.gov
rcohen@law.ga.gov

**IDAHO**
Brett t. DeLange
Deputy Attorney General
State of Idaho
Consumer Protection Division
954 W. Jefferson, 2nd Floor
Boise, ID 83702
P.O. Box 83720
Boise, ID 83720-0010
208.334.2424
Brett.delange@ag.idaho.gov

**INDIANA**
Lawrence J. Carcare II
Deputy Attorney General
Tobacco Enforcement
IGC-South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204
Lawrence.carcare@atg.in.gov

**KANSAS**
Patrick Broxterman, Director
Tobacco Enforcement Unit
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
785.368.8452
Patrick.broxterman@ksag.org

**LOUISIANA**
Patricia H. Wilton
Asst. Attorney General
Sanettria Pleasant (phone contact person)

Office of Civil & Environmental Law
The Capital Building
700 Capital Avenue, Ste 118
Frankfort, KY 40601
Phone:  502.696.5627
Email:  michael.plumley@ag.ky.gov
        james.herrick@ag.ky.gov
        tad.thomas@ag.ky.gov

Gary D. Wilson
4636 30th Street
Washington, DC 20008-2127
202.362.7417
202.362.7417 (fax)
gary.d.wilson@verizon.net

Tobacco Settlement Enforcement Unit
Louisiana Dept. of Justice
1885 N. Third Street, 4th Floor
P.O. Box 94005
Baton Rouge, LA 70804-9005
225.326.6300
225.326.6423 (Sanettria direct)
225.326.6495 (fax)
wiltonp@ag.state.law.us
pleasants@ag.state.la.us

**MAINE**
Jennifer A. Willis
Asst. Attorney General
Consumer Protection Division
Burton M. Cross Office Bldg.
111 Sewall Street
Augusta, ME 04333
jennifer.willis@maine.gov

**MARYLAND**
David Lapp, Chief Counsel
Tobacco Enforcement Unit
Office of the Attorney General of
Maryland
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
410.576.7056
dlapp@aog.md.us

**MASSACHUSETTS**
Elizabeth J. Koenig
Asst. Attorney General
Consumer Protection Division
Public Protection Bureau
One Ashburton Place
Boston, MA 02108
617.727.2200

**MICHIGAN**
Brian D. Devlin
Administrative Law Section
P.O. Box 30212
Lansing, MI 48909
517.373.1123
devlinb@michigan.gov

**MISSOURI**
Curtis R. Stokes
Asst. Attorney General
P.o. Box 899
Jefferson City, MO 65102
573.751.1143
Curt.stokes@ago.mo.gov

**MONTANA**
Mark McLaverty
Montana Dept. of Justice
215 North Sanders
P.O. Box 201401
Helena, MT 201401
406.444.9514
mmclaverty@mt.gov

**NEBRASKA**
Lynne R. Fritz
Asst. Attorney General
Nebraska Attorney General's Office

**NEVADA**
Victoria Thimmesch Oldenburg
Senior Deputy Attorney General
5420 Kietzke Lane, Ste 202

2115 State Capitol
PO Box 98920
Lincoln, NE 68509-8920
Lynne.fritz@nebraska.gov

**NEW HAMPSHIRE**
David A. Rienzo
Asst. Attorney General
Richard W. Head
Asst. Attorney General
33 Capitol Street
Concord, NH 03301
603.271.1249
david.rienzo@doj.nh.gov
richard.head@doj.nh.gov

**NEW MEXICO**
David K. Thomson
Deputy Attorney General
New Mexico Attorney General's Office
408 Galisteo Street
P.O. Drawer 1508
Santa Fe, NM 87504-1508
dthomson@nmag.gov

**NORTH CAROLINA**
Melissa L. Trippe
Special Deputy Attorney General
Richard L. Harrison
Special Deputy Attorney General
North Carolina Dept. of Justice
P O Box 629
114 W. Edenton St., 3rd Floor
Raleigh, NC 27602
919.716.6900
mtrippe@ncdoj.gov
rharris@ncdoj.gov

**OHIO**
Susan C. Walker
Asst. Attorney General
Chief, Tobacco Enforcement Section
30 E. Broad Street, 16th Floor
Columbus, OH 43215-3428
614.387.5600
614.397.5599 (fax)
scwalker@ag.state.oh.us

Reno, NV 89511
775.688.1818
voldenburg@ag.nv.gov

**NEW JERSEY**
Carol B. Jacobson
Sr. Deputy Attorney General
124 Halsey Street
PO Box 25029
Newark, NJ 07101
973.648.4447
carol.jacobson@dol.lps.state.nj.us

**NEW YORK**
Dana Biberman
Christine E. Morrison
Asst. Attorney Generals
Chief, Tobacco Compliance Bureau
120 Broadway, 25th Floor
New York, NY 10271
dana.biberman@oag.state.ny.us
christine.morrison@oag.state.ny.us

**NORTH DAKOTA**
Douglas A. Bahr
Solicitor General
Office of Attorney General
500 North 9th Street
Bismark, NJ 58501-4509
701.328.3640
dbahr@nd.gov

**OKLAHOMA**
E. Clyde Kirk
Asst. Attorneys General
Tobacco Enforcement Unit
313 Northeast 21st Street
Oklahoma City, OK 73105
405.521.3921
405.522.4534 (fax)
clyde.kirk@oag.ok.gov

**OREGON**
Lisa M. Udland
Asst. Attorney General
Oregon Dept. of Justice
1162 Court Street NE
Salem, OR 97301-4096
503.934.4400
503.373.7067 (fax)
lisa.udland@doj.state.or.us

**RHODE ISLAND**
Maureen G. Glynn
Asst. Attorney General &
Health Care Advocate
Rhode Island Dept. of Attorney General
150 S. Main Street
Providence, RI 02903-2907
401.274.4400, ext 2301
401.222.2995 (fax)
mglynn@riag.state.ri.us

**SOUTH DAKOTA**
Patricia Archer
Asst. Attorney General
South Dakota Attorney General's Office
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501
Pat.archer@state.sd.us

**UTAH**
Katherine H. Kinsman
Asst. Attorney General
160 E. 300 South, 5th Floor
P O Box 140857
Salt Lake City, UT 84114-0857
kkinsman@utah.gov

**VIRGINIA**
William E. Thro
Special Counsel
Office of the Attorney General
Christopher Newport University
1 University Place
Newport News, VA 23606
757.594.7571

**PENNSYLVANIA**
Joel M. Ressler
Chief Deputy Attorney General
Chief, Tobacco Enforcement Section
P O Office of the Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
717.783.1794
jressler@attorneygeneral.gov

**SOUTH CAROLINA**
T. Parkin Hunter
Jonathan B. Williams
Asst. Attorney Generals
Office of the Attorney General
State of South Carolina
P O BXO 11549
Columbia, SC 29211-1549
803.734.3680
phunter@ag.state.sc.us
jwilliams@ag.state.sc.us

**TENNESSEE**
Rebekah A. Baker, Asst Attorney General
John H. Sinclair, Jr.
Asst. Attorney General
Stephen R. Butler,
Asst. Attorney General
Office of the Attorney General & Reporter
State of Tennessee
P.O. Box 20207
Nashville, TN 37202

**VERMONT**
Christy Taylor Mihaly
Asst. Attorney General
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609-1001
cmihaly@atg.state.vt.us

**WASHINGTON**
Robert J. Fallis
Asst. Attorney General
Administration Division
Washington Attorney General's Office
800 5th Avenue, Ste 2000, TB-14
Seattle, WA 98104-3188
rustyf@atg.wa.gov

757.594.7864 (fax)
wthro@cnu.edu

## WEST VIRGINIA

## WISCONSIN
Christopher J. Blythe
Asst. Attorney General
Wisconsin Dept. of Justice
17 W. Main Street
P.O. Box 7857
Madison, WI 53707-7857
blythecj@coj.state.wi.us

## WYOMING
Douglas J. Moench
Senior Asst. Attorney General
Kenneth Miller
Asst. Attorney General
Wyoming Attorney General's Office
123 Capitol Avenue
Cheyenne, WY 82002
dmoenc@state.wy.us
kmille2@state.wy.us

## AMERICAN SAMOA

## GUAM
## PUERTO RICO

## NORTHERN MARIANA ISLANDS
## US VIRGINI ISLANDS

## COMMONWEALTH BRANDS, INC.
Robert J. Brookhiser
Elizabeth B. McCallum
Howrey, LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004-2402
202.383.6958
202.383.7336
202.257.3541 (McCallum cell)
202.383.6610 (fax)
brookhiserb@howrey.com
mccallumb@howrey.com

## PREMIER MANUFACTURING
Robert J. Brookhiser
Elizabeth B. McCallum
Howrey, LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004-2402
202.383.6958
202.383.7336
202.257.3541 (McCallum cell)
202.383.6610 (fax)
brookhiserb@howrey.com
mccallumb@howrey.com

Merrill S. Schell
WYATT, TARRANT & COMBS, LLP
2800 PNC Plaza
500 W. Jefferson St.
Louisville, KY 40202
502.589.5235
502.589.0309 (fax)
mschell@wyattfirm.com

## LORILLARD ("OPM")
Irving Scher

## RJ REYNOLDS ("OPM")
Steve Patton

Lee Vanvoorhis
Idit Froim
Weil Gotshal & Manges LLP
767 5th Avenue
New York, NY 10153
212.310.8120
917.825.7279 (cell)
212.310.8007 (fax)
Irving.scher@weil.com
Lee.vanvoorhis@weil.com
Idit.froim@weil.com

Charles S. Cassis
Theresa A. Canaday
Frost Brown Todd LLC
400 W. Market Street, 32nd Floor
Louisville, KY 40202
502.589.5400 (main)
568.0233 (direct)
502.581.1087 (fax)
ccassis@fbtlaw.com
tcanaday@fbtlaw.com

**LIGGETT GROUP, LLC ("SPM")**
Robert J. Brookhiser
Elizabeth B. McCallum
Howrey, LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004-2402
202.383.6958
202.383.7336
202.257.3541 (McCallum cell)
202.383.6610 (fax)
brookhiserb@howrey.com
mccallumb@howrey.com

Merrill S. Schell
WYATT, TARRANT & COMBS, LLP
2800 PNC Plaza
500 W. Jefferson St.
Louisville, KY 40202
502.589.5235
502.589.0309 (fax)
mschell@wyattfirm.com

Douglas G. Smith
Elli Leibenstein
Barack Echols
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, IL 60601-6636
312.861.2406 (direct)
312.861.2000 (main)
312.861.2200 (fax)
spatton@kirkland.com
dsmith@kirkland.com
eleibenstein@kirkland.com
bechols@kirkland.com

Charles S. Cassis
Theresa A. Canada
Frost Brown Todd LLC
400 W. Market Street, 32nd Floor
Louisville, KY 40202
502.589.5400 (main)
568.0233 (direct)
502.581.1087 (fax)
ccassis@fbtlaw.com
tcanaday@fbtlaw.com

**PHILLIP MORRIS, USA, Inc. ("OPM")**
Charles S. Cassis
Theresa A. Canaday
Frost Brown Todd LLC
400 W. Market Street, 32nd Floor
Louisville, KY 40202
502.589.5400 (main)
568.0233 (direct)
502.581.1087 (fax)
ccassis@fbtlaw.com
tcanaday@fbtlaw.com

Douglas L. Wald
Michael B. Bernstein
Eric Shapland
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
202.942.5000 (wk)
202.942.5999 (fax)
Douglas.Wald@aporter.com
Michael.B.Bernstein@aporter.com
Eric.Shapland@aporter.com

**VECTOR ("SPM")**
Robert J. Brookhiser
Elizabeth B. McCallum
Howrey, LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004-2402
202.383.6958
202.383.7336
202.257.3541 (McCallum cell)
202.383.6610 (fax)
brookhiserb@howrey.com
mccallumb@howrey.com


      And I also hereby certify that on this 1st  day of December, 2008, I served the foregoing on all defendants identified by their email addresses below:

'brett.delange@ag.idaho.gov'; 'beth.kittelmann@ag.idaho.gov';
'james.herrick@ag.ky.gov'; 'gary.d.wilson@verizon.net'; 'dennis.hansen@ag.state.ar.us';
'bmeyer@ag.state.ia.us'; 'dstanle@ag.state.ia.us'; 'jambroz@ag.state.ia.us';
'korme@mcdowellrice.com'; scwalker@ag.state.oh.us; 'hannamang@ag.state.la.us';
pleasants@ag.state.la.us; phillipst@ag.state.la.us; wiltonp@ag.state.la.us;
cmihaly@atg.state.vt.us; 'swalker@ag.state.oh.us'; 'AGDSpencer@ag.state.sc.us';
'aqueen@ag.state.sc.us'; 'phunter@ag.state.sc.us'; 'Daniel.Hall@ago.mo.gov';
'Earl.Kraus@ago.mo.gov'; 'gregory.barnes@ago.mo.gov'; 'lynne.fritz@ago.ne.gov';
'jafarshee@ago.state.al.us'; 'cravanelli@ago.state.nm.us'; 'dthomson@ago.state.nm.us';
'eric.estes@arkansasag.gov'; 'jim.depriest@arkansasag.gov'; 'mkueper@atg.state.il.us';
'donna.learned@atg.in.gov'; 'lawrence.carcare@atg.in.gov'; 'jbrill@atg.state.vt.us';
'CamC1@atg.wa.gov'; 'David.Hankins@atg.wa.gov'; 'DougV@atg.wa.gov';
'rustyf@atg.wa.gov'; 'jressler@attorneygeneral.gov'; 'bennett.rushkoff@dc.gov';
'cathy.thurstonseignious@dc.gov'; 'dennis.eckhart@doj.ca.gov';
'michelle.hickerson@doj.ca.gov'; "edavis@doj.gov.vi'; 'mphelan@doj.gov.vi';
'ppaquin@doj.gov.vi'; 'david.rienzo@doj.nh.gov'; Richard.head@doj.nh.gov;
'lisa.udland@doj.state.or.us'; 'blythecj@doj.state.wi.us'; 'gibsoncj@doj.state.wi.us';
'wellslk@doj.state.wi.us'; 'christopher.roy@dor.state.wi.us'; 'tobacco@ksag.org';
Patrick.broxterman@ksag.org; 'Greg.Harkenrider@ky.gov'; 'jmichael.jones@ky.gov';
'Mary.Lassiter@ky.gov'; 'chris_poag@law.state.ak.us';
'cynthia_drinkwater@law.state.ak.us'; 'Alex.R.Barrett@hawaii.gov';
'Earl.R.Hoke@hawaii.gov'; jennifer.willis@maine.gov; 'hackneycd@michigan.gov';
mmclaverty@mt.gov; 'ctweeten@mt.gov'; mmclaverty@mt.gov; 'kosullivan@mt.gov';
'abarefoo@ncdoj.gov'; rharris@ncdoj.gov; 'jbkelly@ncdoj.gov'; 'Klong@ncdoj.gov';
'lemory@ncdoj.gov'; 'mtrippe@ncdoj.gov'; 'rharris@ncdoj.gov';
'mtrestman@oag.state.md.us'; 'clayton_eubanks@oag.state.ok.us';
'phil_stambeck@oag.state.ok.us'; 'ryan_chaffin@oag.state.ok.us';
'gconover@oag.state.va.us'; 'mwyatt@oag.state.va.us';
'wade.hope@revenue.alabama.gov'; 'jlee@riag.ri.gov'; 'kkinsman@utah.gov';
'John.Dalporto@wvago.gov'; 'Joelyn.Gast@iowa.gov'; 'jdiaz@justicia.gobierno.pr';
'laaparicio@justicia.gobierno.pr'; 'nramos@justicia.gobierno.pr';
'janis_hales@revenue.state.ak.us'; 'johanna_bales@revenue.state.ak.us';

'mglynn@riag.state.ri.us'; 'brian.laughlin@state.co.us'; 'jan.zavislan@state.co.us';
'thomase.brown@state.de.us'; pat.archer@state.sd.us; 'daniel.champney@ag.tn.gov';
'rebekah.baker@ag.tn.gov'; 'dmoenc@state.wy.us'; 'kmille2@state.wy.us;
ann.uglietta@azag.gov; kelly.peloquin@azag.gov; 'michael.plumley@ag.ky.gov';
'tad.thomas@ag.ky.gov'; 'attorney.general@state.co.us'; wthro@cnu.edu;
jwilliams@ag.state.sc.us;'rupal.shahpalanki@po.state.ct.us'; voldenburg@ag.nv.gov;
'law@guamattorneygeneral.com'; 'chris.poag@alaska.gov'; 'miag@michigan.gov';
'info@scattorneygeneral.com'; 'greg.abbott@oag.state.tx.us'; 'uag@utah.gov';
'atginfo@atg.state.vt.us'; 'kelly.ayotte@doj.nh.gov'; 'smoore@ncdoj.gov';
'kbergeron@riag.ri.gov'; curt.stokes@ago.mo.gov; 'jeanne.young@wvago.gov';
'attorney.general@state.co.us'; 'attorney.general@state.de.us'; 'smoore@ncdoj.gov';
'dena.spaulding@doj.state.or.us'; 'vfrazer@doj.vi.gov'; 'dthomson@nmag.gov';
'clarson@ag.state.ia.us'; 'janet.carter@ag.idaho.gov'; 'linda.mcewen@state.mn.us';
thomas.overton@state.mn.us; 'eric.estes@arkansasag.gov'; 'troyking@ago.state.al.us';
jsteinwinder@ago.state.al.us; 'sbarrett@law.ga.gov'; rcohen@law.ga.gov;
'mwebb@ago.state.ms.us'; 'rchaffin@oag.ok.gov'; clyde.kirk@oag.ok.gov;
'carol.jacobson@dol.lps.state.nj.us'; cathy.melitski@dol.lps.state.nj.us;
'Dana.Biberman@oag.state.ny.us'; 'christine.morrison@oag.state.ny.us';
'jlong@lvbrands.com'; 'mbell@vectorgroupltd.com'; 'neal.beaton@hklaw.com';
'barry@bboren.com'; 'mark@gopremier.com'; 'Rnuckolls@mckennalong.com';
'stanleyfriedman@mcf-esq.com'; 'nallard@pattonboggs.com';
'denise.keane@pmusa.com'; 'Douglas.Wald@aporter.com';
michael.b.bernstein@aporter.com; eric.shapland@aporter.com; 'irving.scher@weil.com';
'lee.vanvoorhis@weil.com'; 'Idit.Froim@weil.com'; 'mark@gopremier.com';
'gbaka79@yahoo.com'; 'ggahan@altadis.com'; 'jean-dominique.comolli@altadis.com';
'jack_henson@laneltd.com'; 'dlapp@oag.state.md.us'; 'jpcarriere@altadis.com';
'attysmiami@aol.com'; 'dhanrajusa@aol.com'; 'RALNASCO@aol.com';
'rangiuoli2@aol.com'; 'robwilkey@aol.com'; 'heatherj.wilson@po.state.ct.us';
'joseph.rubin@po.state.ct.us'; 'Rupal.ShahPalanki@po.state.ct.us'; 'barry@bboren.com';
'avramstc@bellsouth.net'; 'hcroemer@bellsouth.net'; 'sb@bolattigriffith.com';
'info@chancellor-tobacco.com'; 'mark@cigarettetobacco.com';
'juridico@citatabacos.com'; 'darce@compass.com.ph'; 'bunjoto.astono@djarum.com';
'grace.t.sennelius@djarum.com'; 'rachman.satya@djarum.com'; 'sigold@drl-ent.com';
'zrashwan@easternegypt.com'; 'info@farmerstobacco.com';
'jennifer@farmerstobacco.com'; 'davidchor@gdgroupinc.com';
'dominicchu@gdgroupinc.com'; 'mark@gopremier.com'; 'scoleman@gopremier.com';
'ayh@harksco.com'; 'nbeaton@hklaw.com'; 'brian.caldwell@dc.gov';
'brookhiserb@howrey.com'; 'mccallumb@howrey.com'; 'arnoldh3151@ipass.net';
'sdaniel@ipass.net'; 'amarks@kasowitz.com'; 'spatton@kirkland.com';
dsmith@kirkland.com; eleibenstein@kirkland.com; bechols@kirkland.com;
'bhavani.parameswar@kmm-inc.com'; 'markcassar@kretek.com';
'mikehousego@kretek.com'; 'seancassar@kretek.com'; 'jginsburg@levin-ginsburg.com';
'jweis@levin-ginsburg.com'; dbahr@nd.gov;'bgarner@libertybrandsllc.com';
'sfeit@libertybrandsllc.com'; 'acalso@lignum2.com'; 'kirinaga@lignum2.com';
'tmeyer@lignum2.com'; 'bmcginn@lortobco.com'; 'jlong@lvbrands.com';
'annette.boye@mac-baren.com'; 'per.buch@mac-baren.com'; 'stanleyfriedman@mcf-
esq.com'; 'rnuckolls@mckennalong.com'; 'exportaciones@montepaz.com.uy';
'jamesnooney@montepaz.com.uy'; 'moldes@montepaz.com.uy'; 'abrams52@msn.com';
's-m-johnson@msn.com'; 'wrtco@msn.com'; 'PLEVIN@NAAG.ORG';

'lcarbone@natsherman.com'; 'rmaraia@natsherman.com'; 'jlopezm@palermo.com.py';
'nallard@pattonboggs.com'; 'obermann@planta-tobacco.de'; 'rau@planta-tobacco.de'
'wiesenhuetter@planta-tobacco.de'; 'Anthony.Reale@pmusa.com';
'Blake.p.Auchmoody@pmusa.com'; 'denise.keane@pmusa.com';
'Emmitt.n.davis@pmusa.com'; 'poeschl@poeschl-tobacco.com';
'dspitzer@proskauer.com'; 'winnersales@qwest.net'; 'mckimt@rjrt.com';
'jfranzino@sfntc.com'; 'mjohnson@sfntc.com'; 'william.hunter@skofirm.com';
'dana.m.papillion@us.pwc.com'; 'ryan.harrell@us.pwc.com'; 'cathanasia@usthq.com';
'rkohlberger@usthq.com'; 'fferguson@valottery.com'; 'mbell@vectorgroupltd.com';
'dumbreit@von-eicken.com'; 'umbreit@von-eicken.com'; 'mgkoplow@wlrk.com';
'inttobacco@yahoo.com'; 'shigeru_jr@yahoo.com'; mschell@wyattfirm.com;
ccassis@fbtlaw.com; tcanaday@fbtlaw.com;


 /s/ John K. Bush
COUNSEL FOR PLAINTIFF
VIBO CORPORATION, INC., d/b/a
GENERAL TOBACCO

3125526_2.doc